## SEASON-ALL INDUSTRIES, INC. *v.*
## R. J. GROSSO, INC., ET AL.
## (13778)

HEALEY, SHEA, CALLAHAN, GLASS and HULL, Js.

Argued November 9, 1989—decision released January 23, 1990

*David L. Fineberg,* with whom was *Wesley W. Horton,* for the appellants (defendants).

*Kirk D. Tavtigian, Jr.,* with whom, on the brief, were *John B. Nolan, James J. Tancredi* and *Thomas V. Daily,* for the appellee (plaintiff).

CALLAHAN, J. The principal issue in this appeal is whether the trial court erred when it pierced the corporate veil and held an individual defendant personally liable for a debt owed to the plaintiff. The plaintiff, Season-All Industries, Inc., brought a contract action against the defendants R. J. Grosso Enterprises, Inc., its predecessor, R. J. Grosso, Inc., and its wholly owned subsidiary, R. J. Grosso of New England, Inc. (collectively hereinafter Grosso Enterprises),[1] for amounts allegedly due on an open account for windows sold to the defendants. The plaintiff also sought to pierce the corporate veil and to obtain a judgment against the defendant Richard J. Grosso (Grosso) in his individual capacity as the president and sole stockholder of Grosso Enterprises. The defendants filed a counterclaim for damages seeking compensation for defects in windows supplied by the plaintiff. On June 24, 1988, the court rendered a judgment in favor of the plaintiff on all of its claims, including its claim against Grosso individually, and awarded the plaintiff $370,505.89 in damages. The defendants thereafter filed a motion with the trial court to articulate the basis of its decision to pierce the corporate veil and hold Grosso personally liable. The trial judge, *Aspell, J.,* died before ruling on or complying with the defendants' motion for articulation. The defendants then moved for a new trial pursuant to Gen-

---

[1] The record reveals that in February, 1984, R. J. Grosso, Inc., reorganized into R. J. Grosso Enterprises, Inc., and various subsidiaries, including R. J. Grosso of New England, Inc. The trial court stated that "[t]he reorganization was largely a matter of form and did not substantially alter the business operation or control of the Grosso companies." R. J. Grosso Enterprises, Inc., and R. J. Grosso of New England, Inc., became the successors in liability to R. J. Grosso, Inc. Thus, for simplicity purposes, we will hereafter refer to the Grosso companies as Grosso Enterprises.

eral Statutes § 52-268,[2] which motion was denied by the court, *Aronson, J.* The defendants thereafter appealed from the trial court's judgment. Pursuant to Practice Book § 4023, we transferred the appeal to ourselves. We conclude that there was insufficient evidence presented to the trial court prior to the time that the plaintiff had rested its case against the individual defendant Grosso to hold him personally liable for the debts of Grosso Enterprises. The court, *Aspell, J.,* should therefore have granted Grosso's motion to dismiss for failure to make out a prima facie case pursuant to Practice Book § 302. Accordingly, we find error in part and remand the case to the trial court with direction to render a judgment of dismissal in favor of the individual defendant Grosso.

The trial court found the following facts. In 1980, the plaintiff, a manufacturer of replacement windows, appointed Grosso Enterprises as its exclusive distributor of windows in Connecticut. Beginning in 1982, defects in the windows became apparent. The plaintiff, thereafter, attempted to rectify the problem by making certain design changes. Approximately 17 percent of the windows installed by Grosso Enterprises after June, 1982, however, developed problems. The plaintiff responded by making design changes, supplying the defendants with replacement parts, offering to reimburse distributors for some of the service costs incurred while replacing the windows, replacing defective windows and offering various credits.

---

[2] General Statutes § 52-268 (a) provides: "NEW TRIAL WHEN JUDGE, STENOGRAPHER OR COURT REPORTER DIES OR BECOMES INCAPACITATED AND REVIEW OF ERRORS NOT POSSIBLE. (a) Any party who intends to appeal or has appealed a final judgment of the superior court, or of a judge thereof, an appeal from which properly lies, may move the court in writing for a new trial if the judge who rendered judgment, or the stenographer or court reporter who took the testimony at the original trial therein if his stenographic notes are not decipherable, has died or become incapable of taking the action necessary for the appeal, and the party had complied with the rules relating to the taking of appeals before such death or incapacity."

Faced with these difficulties, Grosso formed R. J. Manufacturing, Inc. (RJM), a manufacturer of replacement windows, in August, 1984. Grosso is the president and chairman of the board of directors of RJM, and owns or controls all of its stock. Grosso Enterprises provided RJM with financial support both by making a start-up loan to RJM and by borrowing money and transferring some of the proceeds of the loans to RJM. In 1985, the Bank of Boston (bank) made a $300,000 loan to RJM after both Grosso Enterprises and Grosso, in his individual capacity, had guaranteed repayment. In addition, Grosso Enterprises pledged all of its stock and assets as security for the loan. In the summer of 1986, the bank called the $300,000 loan to RJM and, when RJM could not pay, threatened to liquidate the assets of both Grosso Enterprises and Grosso, which were pledged as security.

Confronted with the obligation to pay RJM's loan, Grosso formed Champion Financial Group (Champion) in September, 1986. Grosso funded, controlled and owned Champion. Champion paid RJM's obligation to the bank and thereafter became the owner of the assets of Grosso Enterprises. Champion then sold the assets to six newly formed corporations owned by former employees of Grosso Enterprises. The sale of assets was part of a complex agreement providing, in part, that Grosso, in his individual capacity, would enter into various agreements with the six corporations. According to the agreements, Grosso, for a fee, would provide consulting services, would license the Grosso trademark and logo and would receive a royalty fee based upon each corporation's sales volume. Each of the six corporations agreed to: (1) purchase all of their windows from RJM; (2) enter into a noncompetition agreement with Grosso; and (3) grant Grosso a security interest in their assets and pledge their stock to him. Grosso Enterprises thereafter ceased doing business.

The defendants raise three issues on appeal. First, the individual defendant Grosso claims that the trial court erred when it pierced the corporate veil and held him personally responsible for the corporate debts. Second, the defendants assert that the trial court erred when it denied their counterclaim. Third, the defendants claim that their motion for a new trial should be granted because the trial judge died before ruling on their motion for articulation.

I

The defendants' first claim of error contests the trial court's decision to pierce the corporate veil pursuant to the "instrumentality rule." Under the instrumentality rule, a shareholder, director, or officer of a corporate entity can be held personally liable for corporate actions that, in economic reality, are those of the individual. *Campisano* v. *Nardi,* 212 Conn. 282, 291, 562 A.2d 1 (1989). We have consistently held that the instrumentality rule requires proof of three elements: "(1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of." *Zaist* v. *Olson,* 154 Conn. 563, 575, 227 A.2d 552 (1967); *Campisano* v. *Nardi,* supra.

Grosso claims, inter alia, that the trial court erred because it erroneously relied upon evidence to prove his liability under the instrumentality rule, which evi-

dence was admitted after the plaintiff and he had both rested their cases in regard to his individual liability.[3] The plaintiff responds by arguing that: (1) the trial court could rely upon this evidence because it had reopened the case against the individual defendant; (2) Grosso waived this claim when he failed to raise it in his posttrial briefs; and (3) even if the trial court improperly admitted the evidence against the individual defendant, the error was harmless because Grosso had the opportunity to, and did, present rebuttal evidence.

The following facts are pertinent to this claim. The plaintiff rested its case against Grosso on the issue of piercing the corporate veil on March 27, 1987. Grosso, in his individual capacity, also rested at that time. Grosso then moved to dismiss the complaint against him individually, claiming that the plaintiff had presented insufficient evidence to hold him personally liable.[4] The trial court reserved its ruling on the motion at that time and denied it at the conclusion of the trial. After Grosso had rested, during the plaintiff's rebuttal of the corporate defendants' counterclaim, Wayne Jones testified as to the transactions involving Cham-

[3] Since we agree with this claim, we need not reach the parties' other arguments concerning the piercing of the corporate veil.

[4] The transcript of the colloquy on March 27, 1987, states in pertinent part: "Mr. Tavtigian: Your Honor, I have nothing further on the plaintiff's complaint. Obviously, we are reserving the right to call the witnesses on the counterclaim.

"Mr. Goldblatt: I don't know what that means. Does that mean you rest?

"Mr. Tavtigian: Yes.

"Mr. Goldblatt: I move to dismiss counts four and five against Richard Grosso personally, as there has been no evidence produced in the record to support a claim against Mr. Grosso individually. . . .

"The Court: I will reserve decision on it. . . .

"Mr. Goldblatt: As long as your Honor is reserving the ruling, I would like the record to indicate I rest my case on behalf of Mr. Grosso personally, on count four and count five. So, from here on there should be no evidence that comes into this trial that can be admitted against Mr. Grosso."

pion.[5] The trial court manifestly relied upon the evidence of the Champion transactions to conclude that the corporate veil should be pierced to impose individual liability upon Grosso pursuant to the instrumentality rule.

Grosso relies on *State* v. *Uretek, Inc.*, 207 Conn. 706, 543 A.2d 709 (1988), to argue that the trial judge erroneously relied upon evidence admitted after the plaintiff and he had rested their cases concerning individual liability. We agree with Grosso and, in doing so, affirm our holding in *State* v. *Uretek, Inc.*, supra. *Uretek, Inc.*, involved a criminal prosecution against both a corporate defendant and its individual vice president. We held that the trial court could not properly have used the testimony admitted after the state and the individual defendant had rested their cases to decide that the individual defendant's motion for acquittal should be denied. Id., 723. Similarly, in this case, we conclude that the trial court could not rely upon evidence admitted after the plaintiff and the individual defendant rested their cases, and the individual defendant moved to dismiss, to determine that the corporate veil should be pierced and personal liability imposed.

The plaintiff in this case had the burden of proving that the corporate veil should be pierced. See *Campisano* v. *Nardi,* supra, 292. When presenting its case, a plaintiff must introduce *all* of the evidence on which it intends to rely during the presentation of its case-in-chief; it cannot proffer some and reserve the remainder. *DiMaio* v. *Panico,* 115 Conn. 295, 298, 161 A. 238 (1932). Likewise, a defendant must fully set forth all of the evidence on which he intends to rely.

---

[5] Wayne Jones testified that he is an officer and shareholder of Good Life Nutrients, Inc. (GLN, Inc.), a company that sells replacement windows. He worked for Grosso, Inc., from October, 1983, to September, 1986. Apparently, GLN, Inc., is one of the six corporations involved in the Champion transaction.

Id. " 'After [the defendant] has rested, neither party can, as a matter of right, introduce any farther testimony which may properly be considered testimony in chief.' " Id., quoting *Hathaway* v. *Hemingway,* 20 Conn. 191, 196 (1850). We have previously set forth the reasons underlying this rule: " 'first, the possible unfairness to an opponent who has justly supposed that the case in chief was the entire case which he had to meet, and, secondly, the interminable confusion that would be created by an unending alternation of successive fragments of each case which could have been put in at once in the beginning.' 4 Wigmore, Evidence (2d Ed.) § 1873." *DiMaio* v. *Panico,* supra, 299.

If a plaintiff fails to present all of the evidence to the trial court at the proper time, the plaintiff runs the risk that the trial court will dismiss the complaint. Practice Book § 302 allows the trial court to dismiss the case against a defendant whenever it determines that, after the plaintiff has "produced his evidence and rested his cause," the plaintiff has presented insufficient evidence to establish a prima facie case against the defendant. In this case, therefore, Grosso was entitled to have his motion for dismissal ruled upon at the time the parties rested, on the basis of the evidence already submitted. *Cormier* v. *Fugere,* 185 Conn. 1, 2, 440 A.2d 820 (1981).

The plaintiff does not appear to disagree with the foregoing propositions but attempts rather to distinguish *Uretek, Inc.,* by claiming that here the trial court reopened the case against Grosso. We disagree. While the trial court, in the proper instance, has the discretion to permit additional evidence to be introduced before a case is decided; *State* v. *Holmquist,* 173 Conn. 140, 152, 376 A.2d 1111, cert. denied, 434 U.S. 906, 98 S. Ct. 306, 54 L. Ed. 2d 193 (1977); *Hauser* v. *Fairfield,* 126 Conn. 240, 242, 10 A.2d 689 (1940); to do so, it must reopen the case. This is especially important

in an action involving multiple defendants to ensure that an individual defendant has notice that the trial court may utilize any new evidence against him. To hold otherwise would be effectively to deprive such a defendant of the opportunity to cross-examine the additional witness and/or to rebut the additional testimony. The plaintiff concedes that the trial judge never explicitly reopened the case as to the individual defendant. The plaintiff urges us, however, to find that the trial court implicitly did so.[6] This we cannot do. Our review of the transcript indicates that the trial judge never specified that testimony proffered after Grosso had moved to dismiss would be used against him, the individual defendant. In fact, as the plaintiff concedes, the additional evidence admitted was also relevant to the corporate parties and to other issues in the case. Grosso should not have been forced to guess whether the case against him had been resuscitated.

We find the cases cited by the plaintiff for its position, *Hauser* v. *Fairfield,* supra, and *State* v. *Holmquist,* supra, inapposite. Unlike the current case, those cases did not involve multiple defendants. In *Hauser,* we held that the trial court did not abuse its discretion when it allowed additional evidence to be presented after both parties had rested. In that case, however, the defendant town clearly understood that the court had reopened the case against it. In the present case, Grosso had no notice that the trial court was admitting additional evidence concerning his individual liability. The

---

[6] The plaintiff bases its assertion on the following colloquy, which occurred on May 15, 1987:

"The Court: Well, it is interesting to me to know what Mr. Grosso's connection is with GLN.

"Mr. Tavtigian: By the way, for clarification purposes, even if the case is closed to Mr. Grosso, your Honor has the discretion to allow it into evidence at this point in time, and to the extent that the evidence is as Mr. Goldblatt states it is, which I disagree, your Honor has discretion.

"The Court: I'm trying to get a clear picture of this case."

plaintiff could have alleviated this confusion by moving to reopen the case against Grosso, but failed to do so. *State* v. *Greene*, 209 Conn. 458, 474, 551 A.2d 1231 (1988); *State* v. *Brigandi*, 186 Conn. 521, 545, 442 A.2d 927 (1982).

Next, the plaintiff relies on Practice Book § 285A for the proposition that Grosso waived his claim of error by not raising it in his trial briefs. Practice Book § 285A requires the appellant either to state the claim that he plans to appeal "distinctly to the court before his argument is closed or state it in a written trial brief."[7] The plaintiff argues that even though Grosso made repeated objections at trial as to the admissibility of the additional evidence against him, he waived his claim because he did not also raise the claim in his posttrial briefs.[8] We find no merit in the plaintiff's argument.

Our practice is to review claims that have been "distinctly raised at the trial." Practice Book § 4185.[9] Grosso has satisfied this standard. He first set forth

[7] Practice Book § 285A provides: "The parties may, as of right, or shall, if the court so orders, file, at such time as the court shall determine, written trial briefs discussing the issues in the case and the factual or legal basis upon which they ought to be resolved.

"If a party intends to raise any claim of law which may be the subject of an appeal, he must either state the same distinctly to the court before his argument is closed or state it in a written trial brief. If this is not done, it will not be the duty of either the trial court or the appellate court to decide the claim."

[8] The plaintiff asserts that during the testimony of Wayne Jones, "Judge Aspell indicated that she would rely on the parties' briefs in deciding the case . . . ." The plaintiff substantiates its assertion by citing the comment made by Judge Aspell where she stated, "I hope your briefs are clearer than your presentations." We disagree with the plaintiff's interpretation of the trial court's remark. The plaintiff points to no other reference to support its assertion.

[9] Practice Book § 4185 provides in pertinent part: "The supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The supreme court may in the interests of justice notice plain error not brought to the attention of the trial court."

his position when he rested his defense and made a motion for a judgment of dismissal pursuant to Practice Book § 302. The transcript also clearly reflects the individual defendant's repeated objections to the admission of testimony and documents relating to his personal affairs.[10] The trial court, having taken the motion under advisement at the time Grosso moved for dismissal and rested, was obligated to decide it on the basis of the evidence submitted to that point. *State* v. *Uretek, Inc.*, supra, 723. We conclude that Grosso raised his claim at trial with sufficient clarity for this court to consider it on appeal.

---

[10] The transcript of the colloquy on May 15, 1987, states in pertinent part:

"Mr. Goldblatt: One agreement that contains the name of Richard Grosso, or purports to refer to him as an individual, and since the case with respect to him has been rested by both sides, no evidence concerning him individually can be introduced by counsel at this time, your Honor.

"Mr. Tavtigian: Your Honor, the purported exhibit is the exhibits attached to the agreement entered into with the Grosso Enterprises. So, it is clearly relevant to that. It is clearly admissible, and the purpose of the offer is to try to determine what happened to the assets of the Grosso companies.

"The Court: I think it might shed some light on things, Mr. Goldblatt. I'm going to allow it.

"Mr. Tavtigian: Thank you, your Honor. (Whereupon the documents were received into evidence . . . .)

"Mr. Goldblatt: I would take exception to that, your Honor. . . . I don't want any indication on the record that it was reopened or have any intention of reopening it. It was rested at the end of plaintiff's case, and I don't want anymore evidence on it. It is totally inappropriate to have any evidence of Mr. Grosso in the record after that time, and this witness who was called by the plaintiff is an independent business person, and his relationship with Richard Grosso, whatever it is, is not germane to these proceedings, and should not come before this court in any way. That is a rested case. . . .

"Mr. Tavtigian: The reason I'm claiming it is that Mr. Grosso made a claim that his business was destroyed.

"The Court: Right.

"Mr. Tavtigian: We have an agreement as to what happened to the assets of the businesses, and where the funds went.

"The Court: Well, this is part of the agreement anyhow?

"Mr. Tavtigian: It is part of the agreement.

"The Court: If it is part of the agreement, I'm going to let it in."

The plaintiff further argues that even if the trial court improperly considered the evidence admitted after the individual defendant rested, it was harmless error because Grosso had the opportunity to cross-examine the witnesses and to present rebuttal evidence. Grosso claims, however, that the cross-examination and the rebuttal testimony were by the corporate defendant, which had not rested, and not by him, the individual defendant. In light of our determination that the trial court did not reopen the case against Grosso and that Grosso did not have notice that the additional evidence would be used against him, we conclude that the individual defendant did not have a reason or a meaningful opportunity to cross-examine the additional witnesses or to present rebuttal testimony as to his individual liability.

We need not consider whether the evidence submitted before the plaintiff rested its case was sufficient to pierce the corporate veil because at oral argument the plaintiff conceded that it was not.[11]

## II

The defendants' second claim on appeal is that the trial court erred when it denied the defendants' counterclaim. They argue that the trial court erred when it: (1) did not adjust the damage award to compensate the defendants for the defective windows supplied by the plaintiff; (2) concluded that the plaintiff presented credible testimony that the defendants improperly installed their windows; (3) improperly referred to settlement negotiations in its memorandum of decision; and (4) found that Grosso Enterprises' financial position improved after September 30, 1983.

---

[11] At oral argument the plaintiff's counsel stated: "We are not arguing in our brief, your Honor, that sufficient findings were made, before the resting, to pierce the corporate veil." He continued, "We will concede there was not sufficient evidence before the resting."

The defendants claim that even if individually these claims appear harmless, collectively they are material. We are unpersuaded.

" ' "On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. See Practice Book [§ 4061]. This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are *clearly erroneous.*" (Emphasis added.) *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980).' *Cookson* v. *Cookson,* 201 Conn. 229, 242–43, 514 A.2d 323 (1986). In a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. Id., 243; *Gorra Realty, Inc.* v. *Jetmore,* 200 Conn. 151, 160, 510 A.2d 440 (1986). On appeal, 'we will give the evidence the most favorable reasonable construction in support of the verdict to which it is entitled.' *Gorra Realty, Inc.* v. *Jetmore,* supra. ' "A factual finding may be rejected by this court only if it is 'clearly erroneous.' " *Kaplan* v. *Kaplan,* [186 Conn. 387, 392, 441 A.2d 629 (1982)].' *Cookson* v. *Cookson,* supra." *Kimberly-Clark Corporation* v. *Dubno,* 204 Conn. 137, 153–54, 527 A.2d 679 (1987). "The factfinding function is vested in the trial court with its unique opportunity to view the evidence presented in a totality of circumstances, i.e., including its observations of the demeanor and conduct of the witnesses and parties, which is not fully reflected in the cold, printed record which is available to us." *Kaplan* v. *Kaplan,* supra, 391.

The defendants argue that there was sufficient evidence presented to the trial court to warrant an award of money damages on the defendants' counterclaim. They argue that the trial court should have compensated them for the 17 percent of the windows supplied by the plaintiff that were defective. Essentially, they dispute the trial court's finding that Grosso Enterprises "failed to prove substantial pecuniary loss." The trial court's finding that the defendants failed to establish a substantial pecuniary loss, however, is a question of fact, which will not be disturbed on appeal if there is sufficient evidence to support the finding. *Campisano* v. *Nardi,* supra, 286; *Johnson* v. *Healy,* 183 Conn. 514, 515, 440 A.2d 765 (1981); *Miller* v. *Appleby,* 183 Conn. 51, 55, 438 A.2d 811 (1981); *Harper* v. *Adametz,* 142 Conn. 218, 222, 113 A.2d 136 (1955). Such deference to the trial court's factfinding is especially appropriate in this case, where the dispute involves the assessment of the credibility of the witnesses. *Campisano* v. *Nardi* supra. Moreover, the trial court concluded not only that the defendants failed to prove they had sustained a loss, but also that any loss the defendants may have sustained "was caused by actions of the defendant[s] that occurred after the delivery of the defective windows." From our review of the record we cannot conclude that these findings were clearly erroneous.

As to the second and fourth arguments raised by the defendants in their second claim of error, the defendants misinterpret the role of this court. Whether the defendants improperly installed the plaintiff's windows or whether Grosso Enterprises' financial condition improved or deteriorated after September 30, 1983, are questions of fact that we will not disturb on appeal unless clearly erroneous. *Cookson* v. *Cookson,* supra, 242–43.

In their third argument, the defendants contend that the trial court should not have referred to settlement

negotiations in its memorandum of decision, since the negotiations were not admissible evidence, as the trial court itself ruled. Although the trial court mentioned the settlement negotiations in its memorandum of decision, there is no indication that it relied upon the evidence of the negotiations to support its conclusions. It is the appellants' burden to show that a claimed error is harmful. *Brookfield* v. *Candlewood Shores Estates, Inc.,* 201 Conn. 1, 7, 513 A.2d 1218 (1986). The defendants have not sustained their burden of demonstrating harmfulness.

### III

The defendants' final claim is that a new trial should have been ordered after Judge Aspell died without ruling on the defendants' motion for articulation. We need not reach this issue since the requested articulation involved questions relating solely to the trial court's piercing of the corporate veil, which we have found to be in error.

There is error in part, the judgment is set aside as to the individual defendant Grosso and the case is remanded to the trial court with direction to render a judgment of dismissal in favor of the individual defendant.

In this opinion the other justices concurred.