[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed July 30, 1997
Procedural History
The present case arises from two denials of the plaintiffs', George Thomas, Barbara Thomas and John Finnel, requested zone change by the defendants, the City of West Haven, the Planning CT Page 7472 and Zoning Commission of the City of West Haven (Commission), and the individual members of the Commission, Lewis and Saldibar.
On April 1, 1986, the plaintiffs applied to the Commission for a change of zone classification of the plaintiffs' property from C-2 (commercial — local service) on one parcel and R3-2 (residential — two family) on the other to R-5 (apartment building) on both parcels to allow for conversion of the existing building on the property to residential condominium units. After conducting a public hearing on the plaintiffs' application on May 13, 1986, the Commission denied the plaintiffs' application on May 20, 1986.
On June 16, 1986, the plaintiffs, in the name of T.F. Builders, applied for a change of zone classification of their property from C-2 and R3-2 to CM (mixed — commercial and multi-family) to allow for conversion of the building on the property to residential and commercial condominium units. After a public hearing on July 14, 1986, the Commission denied the zone change application on July 22, 1986.
The plaintiff appealed to the Superior Court, pursuant to General Statutes § 8-8. The Court, Schimelman, J., sustained the appeal on the ground that, in denying the zone change application of May 13, 1986, the Commission acted illegally, arbitrarily and in abuse of discretion in that its decision was predetermined and based upon a personal prejudice against Thomas.[1] Thomas v. City of West Haven, Superior Court, judicial district of New Haven at New Haven, Docket No. 284555 (January 9, 1987) (Schimelman, J.).
After the Superior Court sustained the appeal, the plaintiffs' April 1, 1986 zone change application was reactivated at the request of the plaintiffs. On June 23, 1987, the Commission reconsidered the plaintiffs' application at a public hearing. At the hearing, the defendant Guerra spoke in opposition to the spot zoning. On July 1, 1987, the plaintiffs were notified that the Commission had again denied their zone change application.
The plaintiffs appealed to the Superior Court, pursuant to General Statutes § 8-8, from the second denial of their zone change application. The Court, Flanagan, J., sustained the plaintiffs' appeal on the ground that the Commission acted with predisposition and predetermination in denying the plaintiffs' CT Page 7473 application. In reaching its conclusion, the court found that certain Commission members, in particular Saldibar and Lewis, created an atmosphere of hostility toward Thomas, preventing the plaintiffs from getting the fair hearing to which they were entitled. Thomas v. City of West Haven, Superior Court, judicial district of New Haven at New Haven, Docket No. 284555 (June 22, 1988) (Flanagan, J.).
The plaintiffs then instituted a civil action against the defendants. In a six-count amended complaint filed on October 19, 1989 the plaintiffs allege (1) a taking of the plaintiffs' land without due process in violation of article first of the Connecticut constitution and the fifth and fourteenth amendments of the United States constitution, (2) a denial of due process of law in violation of article first of the Connecticut constitution and the fifth and fourteenth amendments of the United States constitution, redress for which is provided by42 U.S.C. § 1983 and (3) a denial of equal in violation of article first of the Connecticut constitution and the fifth andfourteenth amendments of the United States constitution, redress for which is provided by 42 U.S.C. § 1983. The defendants filed an amended answer and/or special defense to the plaintiffs' amended complaint on May 18, 1993, June 28, 1993 and May 16, 1994.
On competing motions for summary judgment, the court, Gordon, J., granted summary judgment in favor of the defendants on the federal due process claim on August 24, 1995. Thomas v. City ofWest Haven, Superior Court, judicial district of New Haven at New Haven, Docket No. 284555 (August 24, 1995) (Gordon, J.).[2] The commissioners then filed a combined motion to dismiss, motion to strike, motion for permission to file a motion for summary judgment and a motion for summary judgment on June 5, 1996. The court, Booth, J., denied the motion to dismiss and the motion for permission to file a motion for summary judgment and granted the motion to strike the state due process claim. Thomas v. City ofWest Haven, Superior Court, judicial district of New Haven at New Haven, Docket No. 284555, 17 CONN. L. RPTR. 426 (July 24, 1996) (Booth, J.).
The case went to trial and the plaintiffs presented their case in chief. After the plaintiffs rested, the defendants moved to dismiss the remaining counts of the revised complaint for failure to make out a prima facie case pursuant to Practice Book § 302.[3] The plaintiffs filed a memorandum in opposition to the motion to dismiss. CT Page 7474
DISCUSSION
"A trial court can dismiss a cause of action where it believes the plaintiff failed to make out a prima facie case. Practice Book § 302; Season-All Industries, Inc. v. R. J.Grosso, Inc., 213 Conn. 486, 493, 569 A.2d 32 (1990). `[Wlhen the evidence produced by the plaintiff, if fully believed, would not permit the trier in reason to find the essential issues on the complaint in favor of the plaintiff,' dismissal pursuant to Practice Book § 302 is appropriate. Hinchliffe v. AmericanMotors Corp., 184 Conn. 607, 609, 440 A.2d 810 (1981); Gulycz v.Stop Shop Co., 29 Conn. App. 519, 523, 615 A.2d 1087 (1992). A § 302 motion is properly considered at the close of the plaintiff's evidence. Carnese v. Middleton, 27 Conn. App. 530,539, 608 A.2d 700 (1992)
"In considering a motion under Practice Book § 302, a trial court must consider all of the plaintiff's evidence to be true. Hinchliffe v. American Motors Corp., supra, [184 Conn.] 609-10; Botmer v. Kocet, 6 Conn. App. 595, 603,507 A.2d 129 (1986). Further, a trial court must draw all inferences in the plaintiff's favor. Pagni v. Corneal, 13 Conn. App. 468, 470,537 A.2d 520, cert. denied, 207 Conn. 810, 541 A.2d 1239 (1988)."Walshon v. Walshon, 42 Conn. App. 651, 654, 681 A.2d 376 (1996), quoting Discover Leasing, Inc. v. Murphy, 33 Conn. App. 303,307-08, 635 A.2d 843 (1993).
The plaintiffs seek redress pursuant to 42 U.S.C. § 1983. "Section 1983 of 42 U.S.C. is available to redress deprivations under color of state law of rights, privileges and immunities secured by federal statutes as well as by the constitution."Fetterman v. University of Connecticut, 192 Conn. 539, 549,473 A.2d 1176 (1984), citing Maine v. Thiboutot, 448 U.S. 1,100 S.Ct. 2502, 65 L.Ed.2d 555 (1979)." [T]he touchstone of [a] § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution [sic]. . . ." (Citations omitted; internal quotation marks omitted.) Tedesco v. Stamford,215 Conn. 450, 456, 576 A.2d 1273 (1990).
State courts have concurrent jurisdiction with federal courts with regard to a 42 U.S.C. § 1983 cause of action. Red MapleProperties v. Zoning Commission, 222 Conn. 730, 739 n. 7,610 A.2d 1238 (1992). Thus, "[t]he decisions of the federal circuit in which a state court is located are entitled to great weight in CT Page 7475 the interpretation of a federal statute. This is particularly true in 42 U.S.C. cases. Id.
Unconstitutional Taking
The first and fourth counts of the plaintiffs amended complaint allege a taking of the plaintiff's land without due process of law in violation of the fifth andfourteenth amendments to the United States constitution and in violation of article first, §§ 8 and 11 of the Connecticut constitution.
In order to receive compensation for an alleged taking pursuant to the United States constitution, the United States Supreme Court has "described at least two discrete categories of regulatory action as compensable . . . The first encompasses regulations that compel the property owner to suffer a physical `invasion' of his property . . . The second situation . . . is where the regulation denies all economically beneficial or productive uses of land." (Citations omitted.) Lucas v. SouthCarolina Coastal Council, 505 U.S. 1003, 1015 (1992).
"The word "taken" in article first, 11 of our state constitution means the exclusion of the owner from his private use and possession, and the assumption of the use and possession for the public purpose by the authority exercising the right of eminent domain. . . . Although property may be `taken' without any actual appropriation or physical intrusion . . . there is no taking in a constitutional sense unless the property cannot be utilized for any reasonable and proper purpose . . . as where the economic utilization of the land is, for all practical purposes, destroyed. . . . A constitutional taking occurs when there is a substantial interference with private property which destroys or nullifies its value or by which the owner's right to its use or enjoyment is in a substantial degree abridged or destroyed. . . ." (Citations omitted; internal quotation marks omitted.) Tamm v. Burns, 222 Conn. 280, 284, 610 A.2d 590 (1992)
"Zoning regulations, so far as they reasonably promote the public health, safety and welfare, are constitutional even though their effect may be to limit the exercise of private property rights. . . . An ordinance which permanently restricts the use of land for any reasonable purpose, however, goes beyond permissible regulation and amounts to `practical confiscation.'" (Citation omitted; internal quotation marks omitted.) Chevron Oil Co. v.Zoning Board of Appeals, 170 Conn. 146, 151, 365 A.2d 387 (1976). CT Page 7476
"[W]e have held that zoning reclassifications can constitute an unconstitutional taking when they leave a property owner with no economically viable use of his land other than exploiting its natural state. . . . Our cases that have found a taking by practical confiscation have involved situations that required a landowner to leave his property in essentially its natural state. See Bartlett v. Zoning Commission, 161 Conn. 24, 282 A.2d 907
(1971); Dooley v. Town Plan Zoning Commission, 151 Conn. 304,197 A.2d 770 (1964)." (Citation omitted; internal quotation marks omitted.) Bauer v. Waste Management of Connecticut,234 Conn. 221, 254-55, 662 A.2d 1179 (1995).
The plaintiffs have not alleged or introduced any evidence to demonstrate that West Haven has rezoned their property leaving the property owner with no economically viable use of the land. In fact, the plaintiffs agree that the land, as presently zoned, has valuable use. Although, the plaintiffs contend that the property's best and highest use would have been achieved if the zone change were granted, the Supreme Court in State NationalBank v. Planning Zoning Commission, 156 Conn. 99, 104,239 A.2d 525 (1968), rejected an unconstitutional taking claim based on such an argument. Accordingly, it is irrelevant to the issue of taking whether the plaintiffs may have made more money from the property if the zone change were granted.
"Short of regulation which finally restricts the use of property for any reasonable purpose resulting in a `practical confiscation,' the determination of whether a taking has occurred must be made on the facts of each case with consideration being given not only to the degree of diminution in the value of the land but also to the nature and degree of public harm to be prevented and to the alternatives available to the landowner. . . . The financial effect on a particular owner must be balanced against the health, safety and welfare of the community. . . . ." (Internal quotation marks omitted.) Bauer v.Waste Management of Connecticut, supra, 234 Conn. 256.
"The financial burden imposed on a landowner by a regulation is measured by the extent to which the regulation interferes with the property owner's reasonable investment-backed expectations of use of the property. . . . . A regulation does not constitute a compensable taking if it does not infringe on such reasonable investment-backed expectations." Bauer v. Waste Management ofConnecticut, supra, 234 Conn. 257. CT Page 7477
The plaintiffs has introduced evidence to show that they expended money in preparing their application for presentation to the Commission. The court concludes that the mere preparation of a zone change application is not an investment-backed expectation of use of the property. Furthermore, assuming, arguendo, that the mere preparation of the application rose to the level of investment-backed expectation of use of the property, the court finds that the plaintiffs have not demonstrated that the expectation was reasonable in light of the discretion vested with the Commission in granting a zone change. See Thomas v. City ofWest Haven, Superior Court, judicial district of New Haven at New Haven, Docket No. 284555, 17 CONN. L. RPTR. 425 (July 24, 1996) (Booth, J.) (the court emphasized that the plaintiffs did not have a "clear entitlement" to the zone change). In addition, the evidence demonstrates, and the plaintiffs do not deny, that the property has a current use and value of which they were never deprived. The plaintiffs have had offers to buy the property and there are commercial tenants currently using the property. The court therefore concludes that, as a matter of law, the plaintiffs have not presented a prima facie case demonstrating that any of the defendants committed an unconstitutional taking pursuant to the Connecticut or United States constitutions.
Equal Protection 42 U.S.C. § 1983
The third and sixth counts of the plaintiff's amended complaint allege a denial of equal protection of the laws pursuant to the United States and Connecticut constitutions. The plaintiffs allege that the redress for a violation of federal equal protection is from 42 U.S.C. § 1983.[4] In essence the plaintiffs allege that the defendants, acting in concert, conspired to single them out for selective treatment based on a malicious or bad faith intent to injure the plaintiffs. The court will address the plaintiffs prima facie case as to the individual and municipal defendants separately because the plaintiffs have alleged and must prove different elements with respect to these defendants.
Individual Defendants
"The concept of equal protection under both the federal and state constitutions has been traditionally viewed as requiring the uniform treatment of persons standing in the same relation to the governmental action questioned or challenged." Franklin v.
CT Page 7478Berger, 211 Conn. 591, 594, 560 A.2d 444 (1989), quoting Reynoldsv. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). "Connecticut affords the same meaning to the equal protection clause set forth in the article first, 20 of the state constitution as is given to the equal protection clause of thefourteenth amendment to United States constitution." Keogh v.Bridgeport, 187 Conn. 53, 66, 444 A.d 225 (1982).[5] "The Second Circuit stated the applicable rule of law: `[L]iability in the instant type of equal protection case should depend on proof that (1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."Schnabel v. Tyler, 230 Conn. 735, 762, 646 A.2d 152 (1994), quoting LeClair v. Saunders, 627 F.2d 606, 608 (2d Cir. 1980);Crowley v. Courville, 76 F.3d 47, 52-53 (2d Cir. 1996). "To sustain [the] equal protection claim . . . [the plaintiffs] must satisfy both prongs of the test stated above." Zahra v. Town ofSouthold, 48 F.3d 674, 684 (2d Cir. 1995). "The malice/badfaith standard should be scrupulously met when the discrimination does not involve classes or groups but individuals." Schnabel v.Tyler, supra, 230 Conn. 763.
A. Mayor Guerra
To survive the motion to dismiss the plaintiffs must make a prima facie case demonstrating that Guerra acted in concert with or conspired with the other defendants to deny their application with a malicious or bad faith intent to injure the plaintiffs and that the plaintiffs, compared with others similarly situated, were selectively treated.
At trial the plaintiffs offered a copy of the transcript from the June 23, 1987 hearing to demonstrate that Guerra acted with malice. Guerra testified that he appeared before the Commission on that date to reiterate his political opposition to spot zoning after one of his constituents requested that he do so.[6] The plaintiffs argue that Guerra's appearance at the hearing and speech against spot zoning establishes a prima facie case of malice. "The mayor as the chief executive officer of the town was in duty bound to express to the public and to local administrative boards what he believed to be in the best interests of the community." Schwartz v. Hamden, 168 Conn. 8, 16357 A.2d 488 (1975). Accordingly, this court cannot infer that CT Page 7479 Guerra acted with malice on the facts presented by the plaintiff. The court finds that the plaintiffs have not succeeded in making a prima facie case of malice on the part of Guerra.
As to the claim that Guerra acted in concert with or conspired with the other defendants, the court concludes that the plaintiffs have offered no evidence to demonstrate this claim. Furthermore, the court cannot infer that Guerra conspired with or acted in concert with the other defendants merely because he spoke at the hearing prior to the plaintiffs' application. As discussed previously, Guerra, as mayor, was duty bound to speak for what he believed to be the best interest of West Haven. In light of this duty the court cannot infer that Guerra conspired with the other defendants. Accordingly, the court concludes that the plaintiffs have failed to demonstrate that Guerra acted in concert with or conspired with the other defendants to injure the plaintiffs.
Further, the plaintiffs have failed to demonstrate that Guerra singled out the plaintiffs' application for selective treatment for two reasons. First, the evidence showed that there were other zone change applications seeking spot zoning before the commission that evening. At the opening of the hearing Guerra stated, "I'm here tonight because on your agenda gentlemen, I read that there are an application [sic] for a site plan review for zone changes to multi-family complexes." (Exhibit I, p. 2.) Second, "[w]e take judicial notice of the uniform practice in this county of mayors and other chief executives, especially when popularly elected, to become the principal proponents for legislative change." Ghent v. Zoning Commission, 220 Conn. 584,588, 600 A.2d 1001 (1991). Faced with this language from our Supreme Court alone, the court cannot infer that just because Guerra spoke just prior to the Commission's hearing of the plaintiffs' application that he intended to single out the plaintiffs application for disparate treatment. The court finds that the evidence shows that Guerra was merely fulfilling his duties as an elected executive.
Accordingly, the court holds that the plaintiffs have failed to make out a prima facie case of an equal protection violation against Guerra because the plaintiffs have not demonstrated that Guerra acted with malice or a bad faith intent to injure them, that he conspired with or acted in concert with the other defendants or that he singled out the plaintiffs for selective treatment. CT Page 7480
B. Lewis and Saldibar
To survive the motion to dismiss the plaintiffs must make a prima facie case demonstrating that Lewis and Saldibar acted with a malicious or bad faith intent to injure the plaintiffs and that the plaintiffs, compared with others similarly situated, were selectively treated.
The plaintiffs seek to demonstrate that Lewis and Saldibar acted with malice toward them based on the court's rulings by Judges Schimelman and Flanagan. "In order for collateral estoppel to bar the relitigation of an issue in a later proceeding, the issue concerning which relitigation is sought to be estopped must be identical to the issue decided in the prior proceeding. To establish whether collateral estoppel applies, the court must determine what facts were necessarily determined in the first trial, and must then assess whether the [party] is attempting to relitigate those facts in the second proceeding. . . . The issues involved in a zoning appeal are separate and distinct from those involved in a civil rights action under the federal statute. . . ." Wight v. Town of Stonington, 43 Conn. App. 654,659, 685 A.2d 686 (1996). In the present case, the court is not considering issues identical to those raised on the zoning appeals, instead the court is considering issues of malice, bad faith and selective treatment. Accordingly, the court concludes that the doctrine of collateral estoppel does not apply.
At trial the plaintiffs introduced audio and video tapes of the May 13, 1986 and the June 23, 1987 hearings before the commission in an effort to show that Lewis and Saldibar acted with malice. "The element of malice raises questions of improper or unjustifiable motive." Haxhi v. Moss, 25 Conn. App. 16, 19,591 A.2d 1275 (1991). The following comments took place at the May 13, 1986 hearing:
 Lewis: This guy [George Thomas] made plans for Silverbrook instead of what he called for and pool hall [inaudible]. We gave this guy everything. Now he comes with this s**t. He's a shrewdy.
 Saldibar: I'd like to have this guy come back when he's ready.
Lewis: Deny with prejudice. CT Page 7481
Planner: You got to listen to him.
Saldibar: All right.
 Lewis: You said we got to listen to him. We do. We listen to him. And that's all there is to it.
Saldibar: Fine. Let's go.
At the June 23, 1987, the following colloquy occurred after the plaintiffs application was called.
Lewis: Why are we hearing this?
Saldibar: Which one?
Lewis: The first one. It was decided twice.
Saldibar: We got to let him come up.
Lewis: Why?
 Saldibar: He's got changes on it I assume. He's on the agenda.
 Lewis: He was denied twice. Where is the corporation counsel?
(Exhibit I, p. 3.)
The corporation counsel rose and informed the Commission of the court's, Shimelman, J., decision. After hearing the substance of the decision the discussion continued in heated tones. Counsel for the plaintiffs then requested that Lewis and Saldibar recuse themselves from hearing and voting on the application in light of Judge Schimelman's decision. Saldibar summarily denied the request stating, "Your request is considered and denied." At this point in the hearing the tapes indicate an attitude of animosity and disdain on the part of Commissioners Lewis and Saldibar for George Thomas. The court concludes that the conversations and comments revealed on these tapes, viewed in the light most favorable to the plaintiffs, demonstrates that Lewis and Saldibar treated the plaintiff George Thomas with animosity and disdain. Accordingly, the court finds that the plaintiffs have demonstrated that the Lewis and Saldibar acted with malice in CT Page 7482 considering their application of June 23, 1987.
The plaintiffs further argue that they were, when compared with others similarly situated, selectively treated. To support their claim, the plaintiffs submitted evidence concerning numerous zone change applications between the months of January 14, 1986, and December 4, 1986, inclusive. In particular the plaintiffs refer the court to the following zone change applications:
1. Z86.2 — Change of zone from R3-1 to C-5; granted.
2. Z86.9 — Change of zone R3-2 to R-5; postponed.
3. Z86.14 — Change of zone from R3-2 to C4; approved.
4. Z86.21 — Change of zone from R2 to R5; tabled.
5. Z86.22 — Change of zone from R2 to R5; granted.
6. Z86.27 — Change of zone from M2, R3-1 to R5; tabled.
7. Z86.28 — Change from R3-1 to C3; tabled.
8. Z86.38 — Change of zone from R3-1 to C-3; tabled.
9. Z86.31 — Change of zone from R3-1 to C5; tabled.
10. Z86.30 — Change of zone from C1 to C5; tabled.
11. Z86.24 — Change of zone from SBD to C5; tabled.
12. Z86.25 — Change of zone from SBD-1 to R5; tabled.
 13. Z86.21 — Change of zone from R2 to R5; modified to R2 and then granted.
14. Z86.27 — Change of zone from M2, R3-1 to R5; granted.
15. Z86.28 — Change of zone from R3-1 to C-3; tabled.
16. Z86.31 — Change of zone from R3-1 to C5; granted.
17. Z86.30 — Change of zone from C1 to C5; granted. CT Page 7483
18. Z87.2 — Change of zone from R2 to M2; continued.
 19. Z87.1 — Change of zone from R3-1 to R3-2; denied with out prejudice.
20. Z87.2 — Change of zone from R2 to M2; tabled.
21. Z87.3 — Change of zone from PF to R5; granted.
The plaintiffs contend that all of these applications were similarly situated to their own; yet, the commission did not require a site plan for the other applications and the other applications received different treatment. The court concludes that merely because the applications were before the board on a request for a zone change does not demonstrate that the various applicants were similarly situated for purposes of a claim of equal protection. For instance, the plaintiffs sought a change of zone from C-2 on one parcel and R3-2 on the other to R-5 on both parcels. None of the applications referred to by the plaintiffs involved a similar zone change request from a commercial/residential zone to a residential zone. Further, the applications requesting changes to R5 were previously zoned residential except for one, Z86.25, which was zoned S.D.D.[7]
In addition, during the May 13, 1986, hearing Roark, the city planner, had the following colloquy with Jessie Hamlin of Hamlin Associates Architects, the architectural firm hired by the plaintiffs:
 Roark: You have submitted your change of zone application. My question is have you submitted a site plain application?
Hamlin: No we haven't
 Roark: Okay, so you're basically seeking a zone change with a conceptual plan that's basically nonbinding.
Hamlin: Exactly.
(Exhibit E, p. 11.)
The court concludes that the plaintiffs have failed to demonstrate that there were any other nonbinding zone change applications based on a conceptual plan before the board during the pertinent time period. CT Page 7484
Moreover, even if the court assumes, arguendo, that each application was similarly situated, the court holds that the plaintiffs have failed to establish that the commission treated their application selectively. The court finds that the plaintiffs' evidence does not demonstrate that the commission did not require a site plan from the other applicants during the time that procedure was in place.[8] Indeed, the evidence submitted is silent as to whether a site plan was submitted or required for the other applications. As to the second denial, the court concludes that the defendants have not demonstrated that the commissions's denial of the application was based on anything other than the commission's exercise of its discretion and not on the alleged malice of Lewis and Saldibar.[9] See Crowley v.Courville, 76 F.3d 47, 53 (2d. Cir 1996). Accordingly, based on the evidence adduced by the plaintiffs, the court concludes that the plaintiffs have not met their burden of demonstrating that they were either similarly situated to others or selectively treated.
 Municipal Defendants — West Haven and The Commission
"A municipality may not be held liable in an action under42 U.S.C. § 1983 for actions alleged to be unconstitutional by its employees below the policymaking level solely on the basis ofrespondeat superior. . . . To hold a municipality liable in an [§ 1983] action, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right. . . . We have previously ruled that a municipal policy may be inferred from the informal acts or omissions of supervisory municipal officers." (Citations omitted; internal quotation marks omitted.) Zahra v. Town of Southold, 48 F.3d 674, 685 (2d. Cir 1995).
In their amended complaint the plaintiffs allege that "the defendants have deprived the plaintiffs of rights secured by thefifth and fourteenth amendments to the Constitution of United States, in the defendants have deprived [the] plaintiffs of the use of their property without just compensation therefor by denying them equal protection under the law. . . ." (Amended Complaint, third count.)
A review of the evidence adduced at trial reveals that the plaintiffs have not demonstrated that they were denied a CT Page 7485 constitutional right by the municipal defendants. The court, on two different occasions, determined that the plaintiffs could not establish that they had a constitutional right to due process as a matter of law. See Thomas v. City of West Haven, Superior Court, judicial district of New Haven at New Haven, Docket No. 284555, 17 CONN. L. RPTR. 425 (July 24, 1996) (Booth, J.) (the court granted a motion to strike the state due process claim adopting the reasoning set forth in Kelley Property Development, Inc. v. Lebanon, supra,226 Conn. 314); Thomas v. City of West Haven, Superior Court, judicial district of New Haven at New Haven, Docket No. 284555 (August 24, 1995) (Gordon, J.) (the court found that the plaintiffs did not have a "clear entitlement to the property interest sought). This court adopts the reasoning in those two decisions to the extent that the decisions discuss the plaintiffs' constitutional right to a zone change. Furthermore, to the extent that the plaintiffs allege that they have been denied equal protection by the municipal defendants, the court concludes that when the evidence is viewed in the light most favorable to the plaintiffs it fails to demonstrate the denial of equal protection or a unconstitutional taking.
Accordingly, for the forgoing reasons discussed herein, addressed to the individual groups of defendants, the court grants the defendants motion to dismiss pursuant to Practice Book § 302 and enters judgement in their favor.
MEADOW, S.T.R.