STATEWIDE GRIEVANCE COMMITTEE *v.*
WILLIAM L. ANKERMAN
(AC 22299)

Foti, Schaller and Peters, Js.

Argued November 21, 2002—officially released January 7, 2003

*William L. Ankerman,* pro se, the appellant (defendant).

*Cathy A. Dowd,* assistant bar counsel, for the appellee (plaintiff).

*Opinion*

FOTI, J. The defendant, William L. Ankerman, appeals from the judgment of the trial court suspending him from the practice of law for a period of three years. Only one of the issues raised by the defendant on appeal merits discussion: The defendant claims that the court improperly denied his motion for a mistrial in which he argued that the court failed to render its judgment within 120 days from the completion date of the trial.[1] We affirm the judgment of the trial court.

---

[1] The defendant raises fourteen other claims in his brief. Having reviewed the claims, we conclude that they are without merit. Although we decline to discuss them, our disposition of one of them warrants a brief explanation. In support of that claim, the defendant points out that the court, in its memorandum of decision, cited Practice Book § 2-41 (e) for the proposition that "[t]he sole issue to be determined in the presentment proceeding shall be the extent of the final discipline to be imposed . . . ." The defendant argues that because Practice Book § 2-41 governs discipline of attorneys who have been convicted of a felony in a jurisdiction other than Connecticut, a circumstance not implicated in this matter, the court's citation to that

The following facts and procedural history are relevant to the resolution of the defendant's appeal. By letter dated July 6, 1998, the defendant informed the statewide grievance committee (committee) of what he deemed to be a "serious problem with [his] actions" in regard to his representation in a legal matter. The letter revealed the following facts. In 1993, the defendant brought a personal injury action on behalf of a minor. The Wallingford Probate Court appointed the minor's parents as guardians of her estate and, after the parties reached a settlement in the lawsuit, the Probate Court approved the settlement. The defendant opened a trust account for the minor and deposited approximately $66,000 in settlement proceeds therein. The defendant thereafter withdrew trust account funds to pay various fees and medical providers, leaving approximately $44,000 in the trust account. The defendant further represented that despite the fact that he was entitled to only $9000 in attorney's fees from the remaining funds, he nonetheless improperly withdrew the entire $44,000 from the account for his personal use.

In September, 2000, the committee, by way of a written complaint filed in the Superior Court, presented the defendant for misconduct not occurring in the presence of the court.[2] In its complaint, the committee alleged, inter alia, that (1) the defendant had reported to it that he had misappropriated approximately $35,000 from

section was "fatal to the validity of its decision." We disagree with that claim, and it suffices to note that although the court's sole reference to Practice Book § 2-41 was erroneous, such error was harmless. After reviewing the memorandum of decision, it is obvious that the court did not base its decision on that section; rather, the court properly conducted a two-pronged analysis. First, it determined by clear and convincing evidence that the defendant had violated the Rules of Professional Conduct. Second, after considering appropriate factors, the court imposed what it concluded was an appropriate sanction against the defendant for such violation. For those reasons, we conclude that the court's reference to Practice Book § 2-41, although improper, had no bearing on its decision.

[2] See Practice Book § 2-47.

the trust account, (2) the Probate Court had issued a decree whereby it ordered the defendant to repay $64,344.14 in misappropriated account funds, (3) the defendant had appeared before the committee to discuss his conduct and (4) it deemed the conduct worthy of disciplinary action by the court. The committee alleged that the defendant had violated rules 1.15 (b),[3] 8.4 (2)[4] and 8.4 (3)[5] of the Rules of Professional Conduct and asked that the court impose such discipline as it deemed appropriate.

On January 10, 2001, the court conducted a hearing on the presentment. At the conclusion of the evidentiary hearing, the court ordered the parties to file briefs by February 1, 2001, and scheduled argument for February 5, 2001. On February 5, 2001, the court heard argument from both parties. On June 5, 2001, the court issued what it entitled a "memorandum of decision" in which it found that the committee had proven by clear and convincing evidence that the defendant had violated the Rules of Professional Conduct alleged in the complaint. In its memorandum, the court ordered the parties to appear before it on July 24, 2001, for a hearing related to the issue of an appropriate disposition and stated

---

[3] Rule 1.15 (b) of the Rules of Professional Conduct provides in relevant part: "Upon receiving funds . . . in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or agreement with the client, a lawyer shall promptly deliver to the client or third person any funds . . . that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property."

[4] Rule 8.4 of the Rules of Professional Conduct provides in relevant part: "It is professional misconduct for a lawyer to . . .

"(2) Commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects . . . ."

[5] Rule 8.4 of the Rules of Professional Conduct provides in relevant part: "It is professional misconduct for a lawyer to . . .

"(3) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation . . . ."

that the court would issue a separate memorandum following that hearing.[6]

On July 24, 2001, the court conducted its hearing. On August 22, 2001, the court issued a memorandum of decision in which it detailed its factual findings concerning the defendant's conduct, set forth its findings and conclusions concerning the appropriate discipline against him, and suspended him from the practice of law for a period of three years. This appeal followed.

The issue before us concerns the court's denial of the motion for a mistrial that the defendant filed on July 23, 2001. By means of that motion, the defendant argued that the court had failed to issue its decision on the complaint within 120 days as required by General Statutes § 51-183b.[7] The defendant posited that February 5, 2001, was the completion date of the trial because, on that date, the parties already had submitted their posttrial briefs and had completed their arguments to the court on the evidence adduced at the January 10, 2001 hearing. The defendant also pointed out that in its June 5, 2001 memorandum, the court made factual findings, but failed to dismiss the complaint or to take any action against him. Essentially, the defendant argued that as of February 5, 2001, the trial had ended and that the court had ample evidence on which to render a judgment. Further, the defendant argued that

[6] The order stated in relevant part: "A hearing will be held as to an appropriate disposition on July 24, 2001, at 2 p.m. The parties are hereby ordered to be prepared to address the aggravating and mitigating factors set forth in §§ 9.22 and 9.32, respectively, of the American Bar Association's Standards for Imposing Lawyer Sanctions. A memorandum will follow that hearing."

[7] General Statutes § 51-183b provides: "Any judge of the Superior Court and any judge trial referee who has the power to render judgment, who has commenced the trial of any civil cause, shall have power to continue such trial and shall render such judgment not later than one hundred and twenty days from the completion date of the trial of such civil cause. The parties may waive the provisions of this section."

the court, by failing to render judgment by June 5, 2001, failed to "retain jurisdiction" and that its order, requiring the parties to appear for an additional hearing related to the issue of sanctions, did not open the hearing.

The court heard argument on the defendant's motion on July 24, 2001. The court denied the motion. The court explained that it scheduled an additional hearing related to the issue of sanctions because, in light of the seriousness of the proceeding and the fact that any sanction it would impose would have a dire effect on the defendant's career, it wanted to afford the defendant an opportunity "to make sure that there was nothing that the court overlooked or that [the defendant] wished the court to consider that was not already before the court." The court further stated that it had "the option [during the 120 day period after the completion date of the trial] to reopen the evidence if the court feels that it needs more evidence or more input from the lawyers for any reason to assist the court in reaching its decision." In its subsequent August 22, 2001 memorandum of decision, the court further explained that it ordered the parties to appear at the hearing "because there was a dearth of evidence to assist the court in reaching an appropriate disposition." The court stated that because of that lack of evidence and in the interest of justice, it "chose to proceed cautiously and afford [the defendant] an additional opportunity to present evidence in mitigation of his misconduct before imposing discipline."

On appeal, the defendant reiterates the arguments on which he relied in his motion for a mistrial. We first set forth the standard by which we will evaluate his claim. "The decision as to whether to grant a motion for a mistrial . . . is one that requires the trial court to exercise its judicial discretion. . . . Our review of the trial court's exercise of its discretion is limited to

questions of whether the court correctly applied the law and could reasonably have concluded as it did. . . . Every reasonable presumption will be given in favor of the trial court's ruling. . . . It is only when an abuse of discretion is manifest or where an injustice appears to have been done that a reversal will result from the trial court's exercise of discretion." (Internal quotation marks omitted.) *Nevers* v. *Van Zuilen*, 47 Conn. App. 46, 51, 700 A.2d 726 (1997).

In reviewing the court's exercise of discretion, we necessarily must determine whether the court correctly applied the law and reasonably could have concluded that the operation of § 51-183b, as well as the defendant's objection on such ground, did not deprive it of the power to continue to exercise its jurisdiction over the parties.[8] We afford plenary review to the court's legal conclusions. See *Verna* v. *Commissioner of Revenue Services*, 261 Conn. 102, 107, 801 A.2d 769 (2002); *Langan* v. *Weeks*, 37 Conn. App. 105, 112, 655 A.2d 771 (1995).

We conclude that on June 5, 2001, when the court ordered the parties to appear at a subsequent hearing to address the issue of aggravating and mitigating factors, it opened the case. A court, in the interest of justice, after the close of evidence, may exercise its discretion to open the case for the purpose of permitting the introduction of additional evidence. *Season-All Industries, Inc.* v. *R. J. Grosso, Inc.*, 213 Conn. 486, 493, 569 A.2d 32 (1990); *Hauser* v. *Fairfield*, 126 Conn. 240, 242, 10 A.2d 689 (1940).

---

[8] "[T]he defect in a late judgment is that it implicates the trial court's power to continue to exercise jurisdiction over the parties before it. . . . A delay in decision beyond that authorized by the statute makes the decision voidable and, absent waiver, requires a new trial." (Citations omitted; internal quotation marks omitted.) *Lauer* v. *Zoning Commission*, 246 Conn. 251, 255–56, 716 A.2d 840 (1998); see also *Waterman* v. *United Caribbean, Inc.*, 215 Conn. 688, 691–93, 577 A.2d 1047 (1990).

In the present case, the court explained that it chose to open the case because "there was a dearth of evidence to assist the court in reaching an appropriate disposition." The court further stated that "[i]n the interest of justice, [it] chose to proceed cautiously and afford [the defendant] an additional opportunity to present evidence in mitigation of his misconduct before imposing discipline." The court's decision to seek additional evidence did not reflect an abuse of discretion. "A judge is not an interlocutor presiding over a debate. He is a minister of justice. . . . To this end, he is empowered to exercise a reasonable discretion in the conduct of a trial." (Citations omitted.) *McWilliams* v. *American Fidelity Co.*, 140 Conn. 572, 580–81, 102 A.2d 345 (1954).

The defendant posits that (1) the court did not open the case, and (2) that the court could have opened the case only "formally and explicitly." We disagree with both of those assertions. By means of its June 5, 2001 order, copies of which the clerk of the Superior Court mailed to the parties, the court clearly ordered the parties to appear to address the issue of sanctions. Further, the court stated that its memorandum of decision would follow that subsequent hearing. See footnote 6. The court's memorandum of June 5, 2001, did not constitute a judgment. Our Supreme Court has stated that "a 'judgment' is the 'final decision of the court resolving the dispute and determining the rights and obligations of the parties.' " *Lauer* v. *Zoning Commission*, 246 Conn. 251, 257, 716 A.2d 840 (1998), citing Black's Law Dictionary (6th Ed. 1990). In its June 5, 2001 memorandum, the court merely stated its factual findings concerning the defendant's conduct and ordered a hearing related to the second part of its analysis, the imposition of an appropriate sanction.

Even if we were not to conclude that the court explicitly had opened the case, we certainly would conclude that it had done so implicitly. Our Supreme Court has

held that even if a court has not *explicitly* opened a case, it may do so *implicitly,* provided that it gives the party against whom adverse evidence may be used notice that it might admit such adverse evidence. Providing adequate notice affords such adverse party the opportunity to cross-examine any additional witnesses or to rebut any additional evidence adduced after the opening of the case. *Suffield Bank* v. *Berman,* 228 Conn. 766, 784, 639 A.2d 1033 (1994); see also *Season-All Industries, Inc.* v. *R. J. Grosso, Inc.,* supra, 213 Conn. 493–94 (no implicit opening of case where trial court failed to provide notice to parties that it may use newly admitted evidence against them).

Contrary to the defendant's argument, the court put the defendant on notice that it was scheduling the July 24, 2001 hearing to elicit additional evidence and argument as to the issue of sanctions against him.[9] At the beginning of the hearing, the court essentially reminded the defendant that the additional hearing was for his benefit; it gave him the opportunity to produce evidence to address mitigating factors that the court should take into consideration before imposing any sanctions. For those reasons, the defendant cannot be heard to complain that the opening of the case prejudiced his defense of the action or that he lacked notice of what additional evidence or argument the court sought. At the July 24, 2001 hearing, the defendant introduced several docu-

---

[9] Although the defendant argues in his brief, as he did at trial, that prior to the hearing, he did not know whether the court sought to elicit additional evidence, we note that the defendant filed a motion for a continuance on July 23, 2001. The defendant informed the court that the purpose of the motion was to give him additional time "to obtain character witnesses" to testify on his behalf at the July 24, 2001 hearing. The court denied the motion for a continuance after the defendant conceded that he was not aware of any actual scheduling conflicts that precluded witnesses from so testifying. The defendant's conduct in filing the motion and the substance of his arguments to the court in support thereof, as well as his presentation of evidence at the hearing itself, belie his representation that he was unsure whether the court would admit additional evidence at the hearing.

mentary exhibits into evidence and argued that several mitigating factors weighed in his favor.

Having reached this point in our analysis, we conclude that the court properly exercised its discretion in opening the case. Having found the defendant's conduct to be violative of the Rules of Professional Conduct, the court turned its attention to the second part of its deliberations, the imposition of sanctions. It noticed an evidentiary void and, in the interest of justice, asked the parties to address the matter. As a result, the court opened the case on June 5, 2001, within 120 days from the February 5, 2001 completion date of the trial. After the court conducted the additional hearing on the issue of sanctions, the new completion date of the trial was July 24, 2001. The court rendered its judgment against the plaintiff on August 22, 2001, well within the statutory time period.

Because the court was well within its province to open the case within the 120 days after the completion date of the trial, it legally and logically concluded that it retained the power to exercise its jurisdiction over the parties. Accordingly, we conclude that the court's denial of the defendant's motion for a mistrial resulted from a proper exercise of its discretion.

The judgment is affirmed.

In this opinion the other judges concurred.