LEVITE R. CORMIER ET AL. *v.* JOSEPH M. FUGERE ET AL.

BOGDANSKI, C. J., PETERS, HEALEY, PARSKEY and ARMENTANO, Js.

Argued April 7—decision released July 21, 1981

*Kenneth L. Shluger,* with whom, on the brief, were *Igor I. Sikorsky, Jr.,* and *David F. Waters,* law student intern, for the appellants (plaintiffs).

*Warren Miller,* for the appellees (defendants).

PER CURIAM. The plaintiffs, North American Airlines, Inc. (Airlines) and Levite R. Cormier, president and stockholder of Airlines, commenced this action against the defendants, Pilgrim Aviation and Airlines, Inc. (Pilgrim) and Joseph M. Fugere, president of Pilgrim. They claimed damages proximately caused by the defendants' tortious inter-

ference with their business expectancy. After the plaintiffs rested their case at trial, the defendants moved for a judgment of dismissal. Practice Book § 302; General Statutes § 52-210. They based their motion on four grounds, one of which was the plaintiffs' failure to establish a prima facie case. The trial court denied this motion, finding that a prima facie case had been established.

Subsequent to this decision, the defendants filed a second motion for judgment of dismissal after resting their case and without producing any additional evidence. The second motion was essentially identical to the first motion. Upon reconsideration, the trial court found that its earlier analysis was incorrect and that it should have granted the first motion. As a result, it granted the defendants' second motion for judgment of dismissal. Although there is no articulation for its reasoning, we assume that the decision to grant the second motion was based on a finding that the plaintiffs failed to establish a prima facie case.

A motion for judgment of dismissal must be made by the defendant and decided by the court after the plaintiff has rested his case, but before the defendant produces evidence. Practice Book § 302; General Statutes § 52-210; *Bennett* v. *Agricultural Ins. Co.*, 51 Conn. 504, 512 (1884); Stephenson, Conn. Civ. Proc. (2d Ed.) §§ 192e and 193b. In this case, both the defendants' filing of the second motion for judgment of dismissal and the court's granting of it were untimely. Likewise, we note that the trial court offered no justification or explanation for first denying, and then granting, essentially identical motions. Since neither party claimed these issues at trial and since no such claims of law

have been raised or pursued in this appeal, we deem them waived and will not consider them. Practice Book §§ 285A and 3063. Instead we will consider whether the trial court erred when it granted the defendants' second motion for judgment of dismissal on the ground that the plaintiffs failed to establish a prima facie case.

"A motion for judgment of dismissal has replaced the former motion for nonsuit for failure to make out a prima facie case. Compare Practice Book § 302 with Practice Book, 1963, § 278; see *Lukas* v. *New Haven,* 184 Conn. 205, 210 n.3, 439 A.2d 949 (1981). When such a motion has been granted, the question is whether sufficient facts were proved to make out a prima facie case. *Pignatario* v. *Meyers,* 100 Conn. 234, 239–40, 123 A. 263 (1924). To state it another way, a judgment of dismissal is proper 'when the evidence produced by the plaintiff, if fully believed, would not permit the trier in reason to find the essential issues on the complaint in favor of the plaintiff.' *Minicozzi* v. *Atlantic Refining Co.,* 143 Conn. 226, 230, 120 A.2d 924 (1956). The evidence offered by the plaintiff is to be taken as true and interpreted in the light most favorable to him, and every reasonable inference is to be drawn in his favor. *Ace-High Dresses, Inc.* v. *J. C. Trucking Co.,* 122 Conn. 578, 579, 191 A. 536 (1937). A party has the same right to submit a weak case as he has to submit a strong one. *Fritz* v. *Gaudet,* 101 Conn. 52, 53, 124 A. 841 (1924). See *Lukas* v. *New Haven,* supra, 210–11; *Crowell* v. *Palmer,* 134 Conn. 502, 505, 58 A.2d 729 (1948); Maltbie, Conn. App. Proc. §§ 215 and 217; Stephenson, Conn. Civ. Proc. (2d Ed.) § 192f." *Hinchliffe* v. *American Motors Corporation,* 184 Conn. 607, 609–10 440 A.2d 810 (1981).

"In considering the case presented on a motion for [judgment of dismissal, the trial court should not be concerned] with the sufficiency of the complaint in point of law; there are other ways provided to test that matter. The sole question before the trial court was whether, upon the allegations of the complaint and the admissions and denials in the subsequent pleadings, sufficient facts had been proved to make out a prima facie case." (Citations omitted.) *Pignatario* v. *Meyers,* supra, 239; see *Hinchliffe* v. *American Motors Corporation,* supra, 621n.

Airlines operated a commuter and freight airline service between Hartford and Montreal, Canada, pursuant to a Class C-2 license issued by the Canadian Air Transport Authority. Airlines held other operating certificates required to provide its airline service. Pilgrim also engaged in a commuter and freight airline service, but did not have the authority to operate between Hartford and Montreal.

The alleged tortious interference by the defendants occurred during bankruptcy proceedings in which the plaintiffs attempted to reorganize their business. In April, 1972, Airlines filed a petition for voluntary reorganization under Chapter XI of the Bankruptcy Act, listing its Class C-2 license and other operating certificates as assets. In June, 1972, it filed a proposed plan of arrangement and an application to sell all its assets for thirty thousand dollars to a Delaware corporation. Cormier had organized the Delaware corporation for the purpose of purchasing Airlines' assets and of continuing Airlines' operations. There were no contingencies attached to the offer made by the Delaware corporation.

In July, 1972, Pilgrim submitted an offer to purchase the same assets for forty thousand dollars, contingent on approval of the transfer of the Class C-2 license to it. This offer was later increased to fifty-one thousand dollars in September, 1972. Pilgrim made both offers in direct competition to the Delaware corporation's offer. While these offers were pending, Pilgrim made an independent application to the Canadian authorities for a Class C-2 license. It is these activities that the plaintiffs allege constituted the tortious interference with their efforts (1) to merge Airlines with the Delaware corporation; (2) to sell Airlines' assets for a meaningful price; and (3) to continue providing airline service between Hartford and Montreal.

In early August, 1972, the creditors approved Airlines' proposed plan of arrangement and its application to sell. Before the Bankruptcy Court would confirm the plan, it ordered the Delaware corporation to deposit the purchase money with the Bankruptcy Court. The required thirty thousand dollar deposit, however, was never made. As a result, the Bankruptcy Court never confirmed the plan and, instead, adjudicated Airlines as bankrupt on October 30, 1972. This ended the plaintiffs' efforts to reorganize the business and to continue the airline service operation. In March, 1973, the Canadian authorities cancelled Airlines' Class C-2 license. It was subsequently awarded by them to Pilgrim pursuant to its application. Pilgrim could not obtain the license as part of its offer to purchase Airlines' assets because the Canadian authorities refused to authorize a transfer of the nontransferable license from Airlines to Pilgrim.

In their complaint, the plaintiffs first allege that the defendants' conduct tortiously interfered with

their efforts in the Bankruptcy Court to save Airlines. *Kecko Piping Co.* v. *Monroe,* 172 Conn. 197, 201–202, 374 A.2d 179 (1977). They also allege that the interference caused them to suffer the loss of the Class C-2 license and the value of their investment in Airlines. To establish the tort of tortious interference with a business expectancy, the first allegation is just as essential as the second one. *Busker* v. *United Illuminating Co.,* 156 Conn. 456, 461, 242 A.2d 708 (1968); *Goldman* v. *Feinberg,* 130 Conn. 671, 674–76, 37 A.2d 355 (1944). We have examined the record of the entire proceedings below. The plaintiffs, even were the evidence taken in a light most favorable to them, were unable to establish any connection between the defendants' purchase offer to the Bankruptcy Court and its application to the Canadian authorities on the one hand, and the failure to deposit with the Bankruptcy Court the thirty thousand dollar purchase price on the other hand. In fact both Cormier and the Delaware corporation made independent applications for a Class C-2 license just prior to Pilgrims' application. In addition, the Bankruptcy Court judge testified that although he allowed Pilgrim to file its offers, they were never considered by the Bankruptcy Court until after the adjudication of bankruptcy because under Chapter XI proceedings, Airlines (the debtor), and not the court, had control over the sale of its assets.

It was not the defendants' acts but, rather, the failure to deposit the required purchase money that resulted in Airlines' adjudication as a bankrupt and the cessation of the plaintiffs' efforts to reorganize Airlines and to continue their operation of

an airline service. In other words, the plaintiffs failed to establish the alleged causal relationship between their loss and the defendants' conduct.

Since the plaintiffs failed to produce evidence sufficient to find an essential issue on the complaint in their favor, the trial court did not err by granting the defendants' motion for judgment of dismissal for failure to establish a prima facie case.

There is no error.