[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR JUDGMENT AFTER MOTION FOR RECONSIDERATION
The defendants have filed a motion requesting the court to CT Page 1016 reconsider its ruling which denied the defendants' Motion for Judgment. That motion was filed pursuant to Practice Book 302 after the plaintiff rested. After hearing argument on the Motion for Reconsideration the court agreed to reconsider its ruling on the Motion for Judgment.
After reconsideration and after reviewing the original trial memoranda, the memorandum in support of and in opposition to the Motion for Judgment, the memorandum in support of the Motion for Reconsideration and the evidence produced by the plaintiff at trial, the court believes that its earlier decision was incorrect that that judgment should issue dismissing the action for plaintiff's failure to make out a prima facie case.
The remaining plaintiff, Virginia Celinski, has brought this action to enjoin the enforcement of a Tax Assessment Agreement ("Agreement") entered into by the Town of Manchester ("Town") and the Mall at Buckland Hills Partnership ("Partnership") in 1988. The plaintiff claims that the Agreement is void, illegal and violative of public policy for various reasons including that the Town's actions in executing the Agreement violated the Equal Protection Clause of theFourteenth Amendment to the United States Constitution and constituted an expenditure of municipal funds for an improper purpose.
All of the plaintiff's claims are dependent on her contention that the Agreement violated 12-65b of the Connecticut General Statutes. Indeed the plaintiff has stated in her trial memorandum that "Plaintiff's entire case is based upon the fact that the Town did not comply with the statutes, but rather, chose to formulate its own methods and rules in executing the Agreement."
In its initial ruling on the Motion for Judgment this court stated that in ruling on a Motion for Judgment it must accept the evidence offered by the plaintiff as true, interpret it in the light most favorable to the plaintiff, with every reasonable inference being drawn in her favor. Cormier v. Fugere,185 Conn. 1, 3, 440 A.2d 820 (1991). As the defendants have correctly pointed out, the foregoing rule presupposes that the plaintiff has introduced some evidence. The evidence introduced at trial pertained almost entirely to the issue of the plaintiff's standing to assert the claims in the complaint. Even if the court were to find that the plaintiff submitted CT Page 1017 sufficient evidence to prove her own standing, the plaintiff must make out a prima facie case with respect to her substantive claims in order to defeat a Motion for Judgment.
The plaintiff's underlying claim that the Agreement violates 12-65b presents a question of law. A directed verdict is proper "where the decisive question is one of law." Red Maple Properties v. Zoning Commission, 222 Conn. 730, 735, ___ A.2d ___ (1992) (quoting Gottesman v. Aetna Ins. Co.,177 Conn. 631, 634, 418 A.2d 922 (1979)). This principle applies even more strongly in a trial to the court where the trier of fact is identical to the ruler on the motion for judgment. Angelo Tomasso, Inc. v. Armour Construction Paving, Inc.,187 Conn. 544, 547-48, 497 A.2d 406 (1982).
Section 12-65b provides, in pertinent part:
 (a) Any municipality may, by affirmative vote of its legislative body, enter into a written agreement with any party owning or proposing to acquire an interest in real property in such municipality . . . fixing the assessment of the real property . . . which is the subject of the agreement, and all improvements thereon or therein and to be constructed thereon or therein, . . . (1) for a period of not more than seven years, provided the cost of such improvements to be constructed is not less than three million dollars, . . . .
 (b) The provisions of . . . this section shall only apply if at least one of the following requirements is satisfied: . . . (ii) the improvements are for retail use; . . . .
Based on the evidence introduced by the plaintiff, the allegations of the complaint and applicable law, this court finds that the Agreement complies with the requirements of12-65b. The Agreement is in writing and was entered into between the Town, a municipality, and the Partnership, the owner of real property. The Agreement was approved by an affirmative vote of the Manchester Board of Directors, which has been held to be the legislative body of the Town. Sadlowski v. Manchester, 206 Conn. 579, 591-592, 538 A.2d 1052 (1988). The Agreement fixes the assessment at $7,000,000 on real property and improvements, which were to be a "regional shopping center" CT Page 1018 plus "Traffic Improvements and the Water and Sewer Improvements," at an estimated cost of over $15,000,000. The cost of the improvements to be constructed clearly exceeded the statutorily prescribed threshold of three million dollars. The plaintiff admitted that a shopping mall was constructed on the land which was the subject of the Agreement. Thus, the improvements were clearly for "retail use." Finally, the duration of the fixed assessment is not more than seven years.
The plaintiff has made the following three arguments to support her claim that the Agreement does not comply with12-65b: (1) that 12-64 requires that an assessment under12-65b be fixed at 70% of fair market value; (2) that the fixed assessment period must begin no later than the first day of construction; and (3) that 2.01(i) of the Agreement is improper.
The plaintiff first argues that 12-65b does not provide any manner in which an assessment is to be "fixed." Therefore, a municipality must fix an assessment for purposes of 12-65b
in exactly the same manner as it does under 12-64, the statute which governs the general assessment of property by municipalities. This argument ignores the plain language of12-64 that the 70% assessment scheme applies "except as otherwise provided by law." Section 12-65b clearly constitutes an exception to the normal assessment procedure referred to in the foregoing phrase from 12-64.
It is well established that a statute of specific applicability such as 12-65b prevails over a statute of general applicability, such as 12-64. Budkofsky v. Commission of Motor Vehicles, 177 Conn. 588, 592, 419 A.2d 333 (1979); City of Meriden v. Board of Tax Revenue, 161 Conn. 396, 401,288 A.2d 435 (1971). The Courts of this state have consistently applied taxing statutes of specific application over those of general application. New Haven Water Co. v. North Branford, 174 Conn. 556,564-65, 392 A.2d 456 (1978); City of Meriden v. Board of Tax Review, supra; Metropolitan District v. Barkhamsted, 3 Conn. App. 53, aff'd, 199 Conn. 294, 507 A.2d 92 (1985).
In New Haven Water Co., the Supreme Court reversed the decision of the trial court, which held that Public Act 439, codified in 12-75 of the Connecticut General Statutes, was invalid because its provisions were forbidden by 12-64 and12-71. Public Act 439 provided that the assessment of private CT Page 1019 water company property be based on values established in accordance with the uniform system of accounts established by the public utilities commission. The Court stated:
 [B]oth 12-64 and 12-71 subjecting property generally to a uniform percentage of actual value are expressly made applicable "except as otherwise provided by law" in 12-64 and "except when otherwise provided by law" in 12-71. We conclude that the court erred in holding that Public Act No. 439 was invalid because its provisions were "forbidden" by the provisions of other earlier statutes which were in effect when Public Act 439 was adopted.
The exception language in 12-64 allows a municipality to deviate from the assessment method required by that statute in the manner provided for by 12-65b. Moreover, the interpretation urged by the plaintiff would completely defeat the purpose of 12-65b, which was to permit municipalities to attract economic development by providing developers with financial incentives, such as short term reductions in property taxes, while protecting the best interests of the municipality. Joint Standing Committee Hearings, Finance, 986-87, 1004, 1005 (1971).
The plaintiff argues that the assessment must be "fixed" based on 70% of the fair market value of the property. She implies that the municipality must "fix" the assessment based on the fair market value of the property after all improvements are constructed. If the municipality could only fix the assessment based on post-improvement or maximum fair market value, then12-65b would be totally ineffective at providing any property tax reduction, or economic incentive to developers.
The plaintiff also argues that agreements entered into under 12-65b must commence in the first year of construction. If the assessment were fixed based on the fair market value of property during this period when virtually no improvements had been made thereon, then the fixed assessment would be so low that the best interest of the municipality might suffer.
The foregoing analysis reveals that requiring the fixed assessment contemplated in 12-65b to be based on fair market value of the property would completely frustrate the purpose of CT Page 1020 that statute. In construing a statute, courts "must avoid a construction that fails to attain a natural and sensible result that bears directly on the purpose the legislature sought to achieve." Turner v. Turner, 219 Conn. 703, 713, 595 A.2d 297
(1991). "Statutes are to be read as contemplating sensible, not bizarre results." LeConche v. Elligers, 215 Conn. 701, 713,579 A.2d 1 (1990).
If the General Assembly had wanted to limit municipalities to a specific formula for calculating 12-65b fixed assessment it would have specified the formula as it has done in other statutes. See, e.g., Connecticut General Statutes 12-65 (real estate for housing project, assessment for real estate plus future improvements shall not be less than last regular assessment without future improvements), 12-62g (formula for adjusting veteran's exemption after revaluation), 12-81(10) (enterprise zone manufacturing equipment @ % assessable for 5 assessment years after purchase.)
The plaintiff argues that the Agreement is invalid for a second reason; that the fixed assessment period must begin no later than the first day of construction. Section 12-65b
contains no specific requirement as to the commencement of the fixed assessment period. The only time requirement contained in that statute is that the fixed assessment must last no longer than seven years.
The General Assembly has specifically indicated commencement dates with respect to certain fixed assessment periods. See Connecticut General Statutes 12-65c (agreement to fix the assessment of the property during the period of rehabilitation or construction) (emphasis added); 12-65
(agreement shall not exceed fifteen years from the date of the completion of the housing project or completion of rehabilitation of the housing project or sixteen years from the date of the agreement, whichever is the shorter period) (emphasis added); 12-65g (fixing "the assessment on such [handicapped rehabilitation] property as of the date of the agreement for a period of not longer than five years and to defer any increase in assessment attributable to such improvements") (emphasis added).
In contrast, 12-65b leaves the beginning date of the fixed assessment to the discretion of the Town. The Town has the discretion of when to begin the fixed assessment period. CT Page 1021 Section 12-65b merely requires that, once begun, the fixed assessment must last no longer than seven years.
The plaintiff finally argues that the Agreement violates12-65b because it provides for an "alternate method of distributing the tax rebate to the developer which is not expressly permitted by Section 12-65b." Section 2.01(i) of the Agreement states that the Partnership and developers have an option to pay the full taxes on the property and then have the Town write them a rebate check for the difference between what has been paid and what should have been paid at the fixed assessment amount.
The plaintiff presented no evidence that the foregoing alternative "method of distributing the tax rebate" was ever used, and offered no evidence that the alternative would have a negative economic effect on the Town or taxpayers.
Section 12-65b does not specifically authorize any method of collecting or rebating taxes. Therefore, its failure to specifically authorize one collection alternative mentioned in the Agreement could hardly be deemed to invalidate the Agreement.
The plaintiff claims that the Agreement violates the equal protection clause of the United States Constitution and Article I, Section I of the Connecticut Constitution, more commonly known as the "public emoluments clause." She concedes that the equal protection clause only protects against state taxation which bears unequally on persons or properties of the same class. Allegheny Pittsburgh Coal Co., v. Canty Commission,488 U.S. 336, 109 S.Ct. 633, 639 (1989). However, she argues that the plaintiff, owner of one residence, is in the same class as the defendant Partnership, owner of commercial development property. The foregoing argument ignores the distinction that the legislature made between residential and commercial property, see, e.g. 12-62b, 12-62d.
The basis of an equal protection claim is that the plaintiff is treated differently than someone else in the plaintiff's own classification. Nordlinger v. Hahn,112 S.Ct. 2326, 2331 (1992). Nordlinger distinguished the Allegheny case, supra, on which the plaintiff relies. In both Nordlinger and Allegheny, taxpayers were challenging the assessment of their own property as compared with that of property of the same CT Page 1022 class, i.e., coal mine vs. coal mine, and residential vs. residential. In both cases the plaintiffs challenged the tax assessor's practice of reassessing property only as it was sold. The reassessment practice was held to be unconstitutional in Allegheny, but was upheld in Nordlinger because the tax assessor's actions in that case were expressly authorized by California statutes ("Proposition 13").
The Court in Nordlinger stated, "The Equal Protection Clause does not forbid classifications. It simply keeps governmental decision makers from treating differently persons who are in all relevant respects alike. F.S. Royster Guano Corp. v. Virginia, 253 U.S. 412, 415 (1920)."
The plaintiff and the defendant Partnership are not "in all relevant aspects alike." However, even if they were, that would be no Equal Protection Violation in this case. The Equal Protection Clause is satisfied where, 1) there is a plausible policy reason for the classification, 2) the legislative facts upon which the policy is based rationally may be considered true and 3) the relationship of the classification to the goal is not so attenuated as to render the distinction arbitrary or immaterial. Nordlinger, supra, 60 L.W. 4566. In this case the policy reason for granting property tax breaks to owners of commercial property who intended to put more than three million dollars worth of improvements thereon is clearly plausible: it allows a municipality to attract commercial development. The legislative fact upon which the policy is based is that commercial development is more likely to take place in municipalities where the developers and owners have received tax incentives, than in those where no incentives exist. The classification made by 12-65b is clearly related to the goal of attracting development to a town.
When a government official executes a tax agreement pursuant to a constitutional statute, the agreement is in accord with the Equal Protection Clause of the United States Constitution. Lung v. O'Cheskey, 358 F. Sup. 928, 932 (D.N.M. 1973), aff'd, 414 U.S. 802, 94 S.Ct. 159 (1973). The plaintiff does not attack the constitutionality of 12-65b. That statute expressly authorizes a town to enter into a tax assessment agreement with anyone who proposes to construct retail improvements worth more than three million dollars. This Court has held that the Agreement complies with 12-65b. CT Page 1023
Based on the foregoing, the Agreement does not violate the Equal Protection Clause of the United States Constitution, or the Public Emoluments Clause of the Connecticut Constitution, which has been held to have the same meaning as the Equal Protection Clause. See Barnes v. City of New Haven, 140 Conn. 8,98 A.2d 523 (1953).
The plaintiff also seeks to invalidate the Agreement because it constitutes the expenditure of public funds for an improper purpose. The plaintiff has stated that tax abatement agreements under 12-65b are generally proper. Therefore, her argument that the Agreement constituted an improper expenditure hinges upon her claim that the Agreement violated 12-65b. The Agreement did not violate 12-65b.
For the foregoing reasons the Dismissal is Granted.
By the Court,
AURIGEMMA, J.