******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# C. W. *v.* KEITH J. WARZECHA*
## (AC 45775)

Suarez, Clark and Prescott, Js.

*Syllabus*

The defendant appealed to this court from the judgment of the trial court for the plaintiff on her claim for negligent infliction of emotional distress. Between 2012 and 2015, the plaintiff periodically operated her business that transported special needs children to and from school from her home. Between 2012 and 2015, the defendant, who resided in a nearby home, became concerned that the plaintiff was operating a commercial transportation business from her home after he observed an increase in the number of cars and the amount of traffic in the neighborhood that was associated with the plaintiff's business. In 2015, the defendant complained to his town's zoning department and discovered that the plaintiff did not have a permit to operate her business from her home. After meeting with one or more zoning department officials, the defendant began to document his complaints with photos, digital recordings, and a detailed written timeline of the comings and goings of the plaintiff, her family, and others based upon his personal surveillance of the plaintiff's property. The defendant continuously recorded the plaintiff's residence and took photos of the plaintiff's property from his vehicle using a zoom lens. Although the defendant stopped taking photos of the plaintiff's property in approximately January or February, 2016, he continued to conduct video surveillance of the plaintiff's home until the time of trial and would regularly review the digital recordings. The defendant submitted his documentation, including his digital recordings, photos, and a surveillance report of what he believed to be the plaintiff's alleged zoning violation, to the town's zoning department. In November, 2015, a zoning enforcement officer issued a cease and desist order to the plaintiff, claiming that the operation of her business violated the town's zoning regulations. In response, the plaintiff contacted the local police department and complained to the defendant's supervisors at his place of employment about his surveillance of her property. The plaintiff also

---

* The record reflects that, after the trial court rendered its decision in the present case, the plaintiff, C. W., sought a civil protective order against the defendant, Keith J. Warzecha. In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

occasionally walked by the defendant's home and raised her middle finger toward his cameras, which she knew were recording her. The plaintiff subsequently commenced the present action, alleging that, over a two year period between October, 2015, and November, 2017, the defendant invaded her privacy by visually surveilling, photographing, and video recording her residence; following her in his car; photographing her minor son at her home and while he was at a neighbor's house; using a zoom lens to photograph through the plaintiff's front door as a visitor entered; spying on her from neighboring properties; peering into her home as she watched television; and driving slowly past her home. In one count of her complaint, the plaintiff alleged negligent infliction of emotional distress and that the defendant knew or should have known that his conduct was likely to cause her to suffer emotional distress so severe that it could cause physical illness. At trial, the plaintiff testified about each of the allegations in her complaint and characterized the impact of the defendant's conduct on her life as "devastating." At the close of the plaintiff's case-in-chief, the defendant's counsel stated that he had an oral motion for a directed verdict. The court reserved judgment on the motion and, at the conclusion of evidence, the court ordered the parties to submit posttrial briefs. In the defendant's posttrial brief, he argued, for the first time, that the court should grant the defendant's "motion for dismissal" pursuant to the rule of practice (§ 15-8). Thereafter, the trial court issued a memorandum of decision, in which it found for the plaintiff on her claim for negligent infliction of emotional distress, stating that the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress, that her distress was foreseeable, that the defendant was, in fact, aware that his conduct angered, annoyed, and distressed the plaintiff, that the plaintiff had established that the distress she experienced was severe enough that it might result in illness or bodily harm, that such distress was caused by the defendant, and that the defendant's conduct created such a level of fear and anxiety that the plaintiff refused to open her windows or curtains or let her children play outside alone, that she lost her sense of privacy, and that she became more socially isolated because no one wanted to visit her at her home. The court awarded the plaintiff $10,000 in compensatory damages but did not address the defendant's motion for dismissal in its memorandum of decision. *Held*:

1. This court declined to review the defendant's claim that the trial court abused its discretion by asking him questions during the trial, sua sponte, that went beyond the scope of what was permissible: at trial, the defendant's counsel did not object contemporaneously to the court's questioning of the defendant, nor did the defendant raise any claim of error related to the court's questions in his posttrial brief, and, therefore, his claim was unpreserved; moreover, even if the defendant had preserved his claim, he did not provide any applicable legal authority or meaningful analysis in his appellate brief to support his claim of error, and, therefore,

this court would still decline to review such claim because it was inadequately briefed.

2. The defendant's claim that the evidence presented at trial did not support a finding of negligent infliction of emotional distress was unavailing, this court having found, on the basis of its careful review of the record and viewed in the manner most favorable to sustaining the judgment, that there was sufficient evidence in the record to support the trial court's judgment for the plaintiff with respect to each of the essential elements for a cause of action sounding in negligent infliction of emotional distress:

a. The defendant could not prevail on his arguments that no reasonable fact finder could find that his documentation of activity open to public view created an unreasonable risk of causing the plaintiff severe emotional distress and that, because the plaintiff introduced no evidence that she knew of the full extent of the defendant's documentation prior to trial, that the documentation in the emails from the defendant to the town could not support this element of her claim: this court's review of the trial court's memorandum of decision reflected that the trial court did not refer to the emails from the defendant to the town in concluding that he had created an unreasonable risk of causing the plaintiff emotional distress but, rather, based its finding on the defendant's conduct as testified to by the plaintiff, which plainly encompassed conduct of which the plaintiff was aware prior to the time of trial; moreover, although the plaintiff, prior to the time of the trial, may not have been aware of the full extent of the defendant's extremely detailed documentation of her daily activities, her testimony supported a finding that the distress she experienced arose from the defendant's surveillance activities that were well-known to her over the course of the two year period, and, in addition to the plaintiff's testimony concerning her emotional reaction to these activities, the trial court readily could have inferred that such distress was reasonable given the pervasive nature and extent of the defendant's surveillance activities.

b. The defendant's argument that the plaintiff introduced no evidence that he knew she was distressed by his documentation of her activity was unavailing: the plaintiff was not required to prove that the defendant had actual knowledge of her distress, only that he should have realized that his conduct involved an unreasonable risk of causing the plaintiff emotional distress, to satisfy this element of her claim, and, on the basis of the evidence of the surveillance activities of which the plaintiff was aware prior to the trial, the trial court reasonably could have inferred that the nature and extent of those activities were such that the defendant should have realized that his conduct involved an unreasonable risk of causing the plaintiff emotional distress; moreover, even though the plaintiff did not bear the burden of proving that the defendant actually was aware that his activities were causing her emotional distress, the defendant's claim was further undermined by the evidence in the record

that supported a finding that, prior to the time of trial, he was in fact aware that the plaintiff had experienced emotional distress because of his surveillance activities, given evidence that the plaintiff raised her middle finger in the direction of the defendant's security cameras on multiple occasions and the defendant's testimony that the plaintiff complained to the police and his employer more than fifteen times within a nine month period about his surveillance of the plaintiff's property, from which the court reasonably could infer that the plaintiff was distressed by the presence of the cameras and which further supported a finding that the defendant was made aware or should have realized that his repeated conduct was actually causing the plaintiff to experience emotional distress but that he continued the surveillance nonetheless.

c. The defendant could not prevail on his argument that the evidence presented at trial did not support a finding that the plaintiff's emotional distress was severe enough to result in illness or bodily harm to her; the plaintiff was not required to show that her emotional distress resulted in bodily injury, but only that such distress might result in illness or bodily harm, and the plaintiff presented sufficient evidence of her distress, including her testimony that she was devastated by the defendant's conduct and that she was afraid to open her windows or her curtains or to let her children play outside alone.

d. The defendant's argument that the evidence at trial did not support a finding that his conduct caused the plaintiff's emotional distress was unavailing, this court having found that, on the basis of the plaintiff's testimony as to the cause of her distress, that it was reasonable for the trial court to conclude that the plaintiff had satisfied the element of causation in her negligent infliction of emotional distress claim.

3. The defendant could not prevail on his claim that this court should rule on his motion to dismiss that was not explicitly addressed by the trial court: because a motion to dismiss is a motion entrusted to the trial court, not a reviewing court, and the defendant did not cite any law to the contrary, this court was unable to grant the defendant any relief with respect to his claim; moreover, even if this court reasonably could construe the defendant's claim as an attempt to challenge the trial court's failure to rule on the motion to dismiss, in light of the trial court's finding for the plaintiff with respect to her claim of negligent infliction of emotional distress, it was reasonable for this court to consider the trial court's decision not to grant the defendant's motion to dismiss to be the functional equivalent of a denial, which was not reviewable on appeal.

Argued October 16, 2023—officially released April 30, 2024

*Procedural History*

Action to recover damages for, inter alia, negligent infliction of emotional distress, brought to the Superior

Court in the judicial district of Hartford and tried to the court, *Rosen, J.*; judgment in part for the plaintiff, from which the defendant appealed to this court. *Affirmed.*

*Christopher P. Kriesen*, for the appellant (defendant).

*Kenneth R. Slater, Jr.*, with whom, on the brief, was *Daniel J. Krisch*, for the appellee (plaintiff).

*Opinion*

SUAREZ, J. The defendant, Keith J. Warzecha, appeals from the judgment of the trial court in favor of the plaintiff, C. W., on her claim for negligent infliction of emotional distress. On appeal, the defendant claims that (1) the trial court abused its discretion by asking him questions during the trial, sua sponte, that went beyond the scope of what was permissible, (2) the evidence presented at trial did not support a finding of negligent infliction of emotional distress,[1] and (3) "this court [should] grant [his] motion to dismiss when

---

[1] In his appellate brief, the defendant sets forth his claims of error as follows: (1) "Did the trial court abuse its discretion by sua sponte asking questions of the defendant that went beyond bringing out the facts more clearly for itself and instead developed new evidence beyond what either party had developed and then improperly based its decision in favor of the plaintiff on the third count of her complaint on that evidence"; (2) "[d]id the trial court improperly base its decision in favor of the plaintiff on the third count on findings of fact that were not based upon either the evidence introduced at trial or based upon inferences that could not be reasonably made based upon the evidence introduced at trial"; (3) "[d]id the trial court improperly find, where no reasonable finder of fact could find based on the evidence, in favor of the plaintiff on the third count"; and (4) "[m]ay this court grant the defendant's motion to dismiss when the trial court did not act on it?"

The defendant's second and third claims are governed by the same standard of review, and they essentially challenge whether the evidence supported the court's findings of fact with respect to each of the essential elements of a cause of action sounding in negligent infliction of emotional distress. Therefore, we will address these claims together as a singular claim.

the trial court did not act on it." We affirm the judgment of the trial court.

The following facts, as found by the court or which are otherwise undisputed, and procedural history are relevant to our resolution of the defendant's claims on appeal. Since January, 2008, the plaintiff has resided with her son and daughter in a home that she owns. The plaintiff owns and operates a business that transports special needs children to and from school. Between 2012 and 2015, the plaintiff periodically operated her business from her home. In 2016, the plaintiff operated her business from a principal location outside of the town in which her home is located and had additional operations in surrounding towns.

At all relevant times, the defendant resided in a home that was located diagonally across the street from the plaintiff's home. The defendant was employed as an agent with the federal Drug Enforcement Administration (DEA). Between 2012 and 2015, the defendant became concerned that the plaintiff was operating a commercial transportation business from her home after he observed an increase in the number of cars and the amount of traffic in the neighborhood that was associated with the plaintiff's business. He noticed that individuals wearing shirts with the logo of the plaintiff's business would park their personal vehicles near the plaintiff's home, drive off in vans associated with the plaintiff's business, and return later in the day to switch vehicles. In 2015, the defendant complained to the zoning department of the town in which he and the plaintiff resided and discovered that the plaintiff did not have a permit to operate her business from her home.

After meeting with one or more zoning department officials, the defendant began to document his complaints with photographs, digital recordings, and a detailed written timeline of the comings and goings

of the plaintiff, her family, and others based upon his personal surveillance of the plaintiff's property.[2] The defendant digitally recorded the plaintiff's residence continuously, twenty-four hours per day, seven days per week. The defendant would also take photographs of the plaintiff's property from his vehicle using a zoom lens. Although the defendant stopped taking photographs of the plaintiff's property in approximately January or February, 2016, he continued to conduct video surveillance of the plaintiff's home until the time of trial and would regularly review the digital recordings. The defendant did not trespass on the plaintiff's property or enter her home to take his photographs or video recordings, and all of the plaintiff's activity that he documented occurred in areas open to public view.

The defendant submitted his documentation, including his digital recordings, photographs, and a surveillance report of what he believed to be the plaintiff's alleged zoning violation, to the town's zoning department. On November 18, 2015, a zoning enforcement officer issued a cease and desist order to the plaintiff, claiming that the operation of her business violated the town's zoning regulations. In response, the plaintiff contacted the local police department and complained to the defendant's supervisors at the DEA about his surveillance of her property. The plaintiff thereafter installed surveillance cameras outside of her home that recorded twenty-four hours per day, seven days per week, and captured images of the defendant's home. As animosity escalated between the parties, the plaintiff

---

[2] The court noted in its memorandum of decision that the defendant's timeline of the plaintiff's activities on her property "reflects a near obsessive interest in the plaintiff's daily activities. The defendant apparently watched (or [video recorded]) the activities at the plaintiff's home throughout the day, beginning as early as 3 a.m. on some days. Some of the daily logs list a dozen or more separate entries, with a minute by minute description of [the plaintiff's] activity, including such innocuous observations as when the plaintiff stepped outside her home to smoke a cigarette."

would occasionally walk by the defendant's home and raise her middle finger toward his cameras, which she knew were recording her.

The plaintiff commenced the present action by writ of summons and complaint on April 29, 2018. In her three count complaint, the plaintiff alleged that over a two year period between October, 2015, and November, 2017, the defendant invaded her privacy by visually surveilling, photographing, and video recording her residence; following her in his car; photographing her minor child at her home and while he was at a neighbor's house; using a zoom lens to photograph through the plaintiff's front door as a visitor entered; spying on her from neighboring properties; peering into her home as she watched television; and driving slowly past her home. In count one, the plaintiff sought compensatory and punitive damages for invasion of privacy and alleged that the defendant's conduct caused her fear, anxiety, and severe emotional distress. In count two, sounding in intentional infliction of emotional distress, the plaintiff alleged that such conduct was extreme and outrageous, malicious, and intended to cause the plaintiff to suffer emotional distress. In count three, the plaintiff alleged negligent infliction of emotional distress and that the defendant knew or should have known that his conduct was likely to cause the plaintiff to suffer emotional distress so severe that it could cause physical illness. On January 11, 2021, the defendant filed an answer to the complaint, denying the plaintiff's material allegations.

On May 4, 2022, the court, *Rosen, J.*, held a bench trial that was conducted remotely. The court heard testimony from the plaintiff, her son, her friend, and the defendant. On August 18, 2022, the court issued a memorandum of decision in which it found in favor of the plaintiff on count three of her complaint for negligent

infliction of emotional distress.[3] The court reasoned that "[t]he defendant's conduct over a two year period of, inter alia, photographing and [video recording] the plaintiff from his car, from across the street, and [from] other vantage points, photographing her children and the comings and goings of invited guests, his use of 24/7 surveillance on her home, driving slowly past her home, and documenting in great detail all of her activities created an unreasonable risk of causing the plaintiff emotional distress. Her distress was foreseeable, given the pervasive nature of the surveillance and monitoring, with 24/7 [video recording] continuing to the present time. Indeed, the defendant was aware that his conduct angered, annoyed, and distressed the plaintiff. For example, he submitted into evidence photographs or stills from [video recordings] showing the plaintiff raising her middle finger at him while being photographed or [video recorded]. She further established that the distress she experienced was severe enough that it might result in illness or bodily harm and was caused by the defendant. She characterized the impact of the defendant's conduct on her life as 'devastating.' His conduct created such a level of fear and anxiety that the plaintiff refused to open her windows or curtains or let her children play outside alone. She lost her sense of privacy and became more socially isolated because no one wanted to visit her at her home." The court awarded the plaintiff $10,000 in compensatory damages. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The defendant claims, for the first time on appeal, that the court abused its discretion by asking him questions during the trial, sua sponte, that went beyond the scope

___

[3] In its memorandum of decision, the court found in favor of the defendant on counts one and two of the complaint.

of what was permissible. The plaintiff argues that this court should not review the defendant's claim because he did not preserve it at trial and did not adequately brief it before this court. We agree with the plaintiff.

"Our appellate courts, as a general practice, will not review claims made for the first time on appeal. . . . [A]n appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. . . . [B]ecause our review is limited to matters in the record, we [also] will not address issues not decided by the trial court. . . . [T]o permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court or the opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Citations omitted; internal quotation marks omitted.) *Westry* v. *Litchfield Visitation Center*, 216 Conn. App. 869, 878–79, 287 A.3d 188 (2022); see also Practice Book § 60-5 (court shall not be bound to consider claim unless it was distinctly raised at trial).

Furthermore, "[i]t is well settled that [w]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed." (Internal quotation marks omitted.) *Nowacki* v. *Nowacki*, 129 Conn. App. 157, 163–64, 20 A.3d 702 (2011). "Whe[n] an issue is merely mentioned, but not briefed beyond a bare assertion of the claim, it is deemed to have been waived. . . . In addition, mere conclusory assertions regarding a claim, with no mention of relevant authority

and minimal or no citations from the record, will not suffice." (Internal quotation marks omitted.) *Gorski* v. *McIsaac*, 156 Conn. App. 195, 209, 112 A.3d 201 (2015).

At trial, the defendant's counsel did not object contemporaneously to the court's questioning of the defendant, nor did he raise any claim of error related to the court's questions in his posttrial brief. Therefore, the defendant's claim is unpreserved. Moreover, even if he had preserved his claim, we would still decline to review it because it is inadequately briefed. The defendant has not provided any applicable legal authority or meaningful analysis in his appellate brief to support his claim of error. The defendant cites only to a comparative study between adversarial and civil law systems to baldly assert that the court abused its discretion by asking him questions. See *Reiner* v. *Reiner*, 214 Conn. App. 63, 85, 279 A.3d 788 (2022) (claim inadequately briefed when party provides almost no meaningful analysis in support of claim and does not include any citations to applicable legal authority).

For these distinct reasons, we decline to review the defendant's first claim of error.

II

The defendant next claims that the evidence presented at trial did not support a finding of negligent infliction of emotional distress. Specifically, the defendant argues that there was no evidence to support the court's findings that (1) his conduct created an unreasonable risk of causing the plaintiff emotional distress, (2) the plaintiff's emotional distress was foreseeable, (3) the plaintiff's emotional distress was severe enough that it might result in illness or bodily harm, and (4) his conduct caused the plaintiff emotional distress. The plaintiff maintains that there was ample evidence to support the court's findings on each element of the plaintiff's cause of action. We agree with the plaintiff.

"To establish a claim of negligent infliction of emotional distress, a plaintiff must prove the following elements: (1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." (Internal quotation marks omitted.) *Murphy* v. *Lord Thompson Manor, Inc.*, 105 Conn. App. 546, 552, 938 A.2d 1269, cert. denied, 286 Conn. 914, 945 A.2d 976 (2008).

We review the defendant's claim under the sufficiency of the evidence standard of review. "The standards governing our review of a sufficiency of evidence claim are well established and rigorous. . . . [W]e must determine, in the light most favorable to sustaining the [judgment], whether the totality of the evidence, including reasonable inferences therefrom, supports the [court's judgment] . . . . In making this determination, [t]he evidence must be given the most favorable construction in support of the [judgment] of which it is reasonably capable. . . . In other words, [i]f the [court] could reasonably have reached its conclusion, the [judgment] must stand, even if this court disagrees with it. . . .

"We apply this familiar and deferential scope of review, however, in light of the equally familiar principle that the plaintiff must produce sufficient evidence to remove the [court's] function of examining inferences and finding facts from the realm of speculation." (Citations omitted; internal quotation marks omitted.) *Carrol* v. *Allstate Ins. Co.*, 262 Conn. 433, 442, 815 A.2d 119 (2003). "We continually have held that in order to prevail on a claim of negligent infliction of emotional distress, the plaintiff must prove that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress,

if it were caused, might result in illness or bodily harm. . . . This . . . test essentially requires that the fear or distress experienced by the plaintiffs be reasonable in light of the conduct of the defendants. If such a fear were reasonable in light of the defendants' conduct, the defendants should have realized that their conduct created an unreasonable risk of causing distress, and they, therefore, properly would be held liable. Conversely, if the fear were unreasonable in light of the defendants' conduct, the defendants would not have recognized that their conduct could cause this distress and, therefore, they would not be liable." (Citations omitted; internal quotation marks omitted.) Id., 446–47.

## A

The defendant first asserts that the evidence presented at trial did not support a finding that his documentation of the plaintiff's daily activities created an unreasonable risk of causing the plaintiff emotional distress. The defendant argues that "no reasonable fact finder could find [that his] documentation of activity open to public view created an unreasonable risk of causing the plaintiff severe emotional distress. She had no testimony to show that documentation of such activity is likely to cause severe emotional distress." Also, he contends that "[t]he plaintiff introduced no evidence that [she] knew of the extent of the defendant's documentation." The defendant urges this court to conclude that any "conduct she learned of after the fact and/or at trial—such as the documentation in the emails from the defendant to the town—cannot support her claim." We are not persuaded.

Initially, we note that the defendant's arguments suggest that the court based its findings on his "documentation" of the plaintiff's activities and occurrences at her home. In this subsection of his claim, he appears to use

the word "documentation" to refer to "the documentation in the emails from the defendant to the town . . . ." Our review of the court's memorandum of decision, however, reflects that the court did not refer to these emails in concluding that the defendant had created an unreasonable risk of causing the plaintiff emotional distress. The court, in broad terms, based its finding on "[t]he defendant's conduct over a two year period of, inter alia, photographing and [video recording] the plaintiff from his car, from across the street, and [from] other vantage points, photographing her children and the comings and goings of invited guests, his use of 24/7 surveillance on her home, driving slowly past her home, and documenting in great detail all of her activities . . . ." This evidence plainly encompassed conduct of which the plaintiff was aware prior to the time of trial.

Moreover, although the plaintiff, prior to the time of the trial, may not have been aware of the full extent of the defendant's extremely detailed documentation of her daily activities, her testimony supports a finding that the distress she experienced arose from the defendant's surveillance activities that were well-known to her over the course of a two year period. In addition to the plaintiff's testimony concerning her emotional reaction to these activities, the court readily could infer that such distress was reasonable given the pervasive nature and extent of the defendant's surveillance activities.

At trial, the plaintiff testified to the following conduct by the defendant. On October 9, 2015, the defendant used what the plaintiff described to be a large lensed camera to take photographs of her friends that visited her home. On October 20, 2015, the defendant parked his motor vehicle in a wooded area adjacent to her house and took photographs of her residence. On October 26, 2015, the defendant attempted to follow the

plaintiff to her office. On November 25, 2015, the defendant photographed the plaintiff's son while he was visiting a neighbor's home.[4] On December 4, 2015, the defendant used a camera with a zoom lens to photograph a visitor who was entering the plaintiff's home. On December 9, 2015, the defendant was watching the plaintiff's house from a wooded area across from her property. By December 27, 2015, the defendant had been warned by the local police to leave the plaintiff alone as he had scared her family and friends. On March 31, 2016, the defendant placed a "spy camera" in the woods across the street from the plaintiff's front porch. On one occasion, the defendant used a camcorder on a tripod to record the plaintiff and her friend stretching for Pilates outside of her home. On August 1, 2016, the defendant spied on the plaintiff from her neighbor's backyard and the plaintiff called the police to report the defendant. On November 10, 2017, the defendant drove slowly past the plaintiff's house, parked his vehicle across from her home, and thereafter followed her when she went to the grocery store. On November 30, 2017, the defendant parked at the bottom of the plaintiff's driveway and watched the plaintiff's residence.

On the basis of our review of the record, we conclude that there was sufficient evidence for the court to find that the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress.

B

The defendant next argues that the evidence presented at trial could not support a finding that the plaintiff's distress was foreseeable. Specifically, the defendant claims that the plaintiff "introduced no evidence

---

[4] The plaintiff's son also testified that the defendant had photographed him while he was visiting a neighbor's home.

that the defendant knew she was distressed due to his documentation of her activity."[5] We disagree.

The defendant's argument assigns a higher burden of proof to the plaintiff than that which is required by the law of this state. Our Supreme Court has previously stated that the plaintiff must prove that "the defendant *should have realized* that [his] conduct involved an unreasonable risk of causing emotional distress . . . ." (Emphasis added.) *Carrol* v. *Allstate Ins. Co.*, supra, 262 Conn. 446. The law does not require that the plaintiff prove that the defendant had actual knowledge of her distress, only that he should have realized that his conduct involved an unreasonable risk of causing the plaintiff emotional distress, to satisfy this element of her claim. For this reason, the claim fails.

In part II A of this opinion, we discussed the surveillance activities of which the plaintiff was aware prior to the trial. The court reasonably could have inferred that the nature and extent of these activities were such that the defendant should have realized that his conduct involved an unreasonable risk of causing the plaintiff emotional distress. Moreover, even though the plaintiff did not bear the burden of proving that the defendant actually was aware that his activities were causing her emotional distress, the defendant's claim is further undermined by the evidence in the record that supports a finding that, prior to the time of trial, he was in fact aware that the plaintiff had experienced emotional distress because of his surveillance activities. Specifically, the plaintiff submitted exhibits from the defendant's digital recordings that depicted her raising her middle finger in the direction of his security cameras on multiple occasions, conduct from which the court reasonably

---

[5] The defendant argues that "[e]xamples of such evidence . . . would include a statement from the plaintiff to the defendant that she was experiencing distress, a cease and desist letter from counsel with such an assertion, or the defendant actually witnessing such distress."

could infer that the plaintiff was distressed by the presence of the cameras. In addition, the defendant testified that the plaintiff complained to the police and his employer "over fifteen times within [a] nine month period" about his surveillance of the plaintiff's property. This evidence further supports a finding that the defendant was made aware or should have realized that his repeated conduct was actually causing the plaintiff to experience emotional distress but that he continued the surveillance nonetheless.

The defendant's claim amounts to a mischaracterization of the plaintiff's burden of proof. Furthermore, on the basis of our review of the record, we conclude that there is ample evidence in the record to support the court's finding that the plaintiff's distress was foreseeable.

C

The defendant further argues that the evidence presented at trial did not support a finding that the plaintiff's emotional distress was severe enough to result in illness or bodily harm to her. Specifically, the defendant claims that the plaintiff "had no expert medical testimony to establish [that] she suffered emotional distress, let alone emotional distress severe enough that it might result in illness or bodily harm. . . . She offered no testimony that might meet her high burden of proof (for example, evidence that she was hospitalized, unable to work, or unable to parent her minor children)." We are not persuaded.

The defendant's argument, like the argument he raised in part II B of this opinion, misconstrues the burden of proof required to prove this element of a negligent infliction of emotional distress claim. Our Supreme Court has stated that, "[t]his court . . . in *Montinieri* v. *Southern New England Telephone Co.*, [175 Conn. 337, 344, 398 A.2d 1180 (1978)], concluded

that there is no logical reason for making a distinction, for purposes of determining liability, between those cases where the emotional distress results in bodily injury and those cases where there is emotional distress only. . . . The only requirement is that the distress *might* result in illness or bodily harm." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Carrol* v. *Allstate Ins. Co.*, supra, 262 Conn. 448; see also *Perodeau* v. *Hartford*, 259 Conn. 729, 749, 792 A.2d 752 (2002) ("recovery for unintentionally-caused emotional distress does not depend on proof of either an ensuing physical injury or a risk of harm from physical impact" (internal quotation marks omitted)).

The plaintiff in *Carrol* brought an action against his homeowners insurer for, inter alia, negligent infliction of emotional distress in connection with the insurer's course of action in responding to a claim for insurance benefits following a fire at his home. See *Carrol* v. *Allstate Ins. Co.*, supra, 262 Conn. 434–35. Our Supreme Court concluded that there was sufficient evidence that the plaintiff had suffered distress that was severe enough to result in illness or bodily harm to him because the plaintiff testified that "he could not sleep, had frequent nightmares, had a loss of appetite, and experienced depression and a sense of isolation from his community because of the investigation [into the cause of the fire conducted by the insurer]." Id., 448. In the present case, the plaintiff presented similar evidence of distress, as she testified that she was "devastat[ed]" by the defendant's conduct. She stated: "I can't open my windows. I can't open my curtains. My children can't play outside without me being right there. I can't go to the police anymore. . . . I've planted trees. . . . I have no privacy. None. No one wants to come over [to] my house. . . . And it's all in the name of a zoning violation . . . ."

On the basis of our review of the record, we conclude that there is sufficient evidence to support a finding that the plaintiff's emotional distress was severe enough that it might result in illness or bodily harm.

D

The defendant's final argument with respect to this claim is that the evidence presented at trial did not support a finding that the defendant's conduct caused the plaintiff's emotional distress. Echoing an argument discussed in part II C of this opinion, the defendant argues that the plaintiff "had no medical expert testify to establish a causal connection. She offered no testimony that might meet her high burden of proof (for example, evidence that she was hospitalized, unable to work, or unable to parent her minor children)." We are not persuaded.

As previously stated in this opinion, the plaintiff must prove that the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress. In *Carrol*, our Supreme Court found that there was sufficient evidence of causation for a finding of negligent infliction of emotional distress based upon the plaintiff's testimony that the defendant's actions were " 'devastating' and the cause of his emotional turmoil." *Carrol* v. *Allstate Ins. Co.*, supra, 262 Conn. 448. In the present case, the plaintiff similarly testified that the effect of the defendant's conduct was devastating. In its memorandum of decision, the court expressly referred to this testimony. The court stated that "[the plaintiff] characterized the impact of the defendant's conduct on her life as 'devastating.' His conduct created such a level of fear and anxiety that the plaintiff refused to open her windows or curtains or let her children play outside alone." Based on the plaintiff's testimony as to the cause of her distress, it was reasonable for the court to conclude that the plaintiff had satisfied

the element of causation in her negligent infliction of emotional distress claim.

On the basis of our careful review of the record, viewed in the manner most favorable to sustaining the judgment, we conclude that there is sufficient evidence in the record to support the court's judgment in favor of the plaintiff with respect to each of the essential elements for a cause of action sounding in negligent infliction of emotional distress.

### III

The defendant's final claim is that "this court [should] grant [his] motion to dismiss when the trial court did not act on it." Specifically, the defendant argues that this court, on appeal, should rule on his motion to dismiss that he represents was raised at the close of the plaintiff's case-in-chief and in his posttrial brief. The plaintiff contends that the court implicitly and correctly denied the defendant's motion by finding for the plaintiff in its final decision. We are not persuaded by the defendant's arguments.

The following additional facts and procedural history are relevant to our disposition of the defendant's claim. At the close of the plaintiff's case-in-chief, the defendant's counsel stated: "[B]efore I call [the defendant], I do have an oral motion for a directed verdict, Your Honor. I understand it's a courtside trial, but I think I can still move for a directed verdict." The court then reserved judgment on the defendant's motion for a directed verdict and articulated that "this is a bench trial and we're [going to] discuss at the conclusion of evidence whether the parties wish to have closing arguments or submit posttrial briefs. And you can address the legal issues at that time." At the conclusion of the evidence, the court ordered the parties to submit posttrial briefs. In the defendant's posttrial brief, he argued,

for the first time, that the court should grant the defendant's "motion for dismissal" pursuant to Practice Book § 15-8. The court did not address the defendant's motion in its memorandum of decision but found in favor of the plaintiff with respect to her claim of negligent infliction of emotional distress.[6]

Practice Book § 15-8, titled "Dismissal in Court Cases for Failure To Make Out a Prima Facie Case," provides: "If, on the trial of any issue of fact in a civil matter tried to the court, the plaintiff has produced evidence and rested, a defendant may move for judgment of dismissal, and the judicial authority *may* grant such motion if the plaintiff has failed to make out a prima facie case. The defendant may offer evidence in the event the motion is not granted, without having reserved the right to do so and to the same extent as if the motion had not been made." (Emphasis added.) A motion to dismiss is a motion entrusted to the trial court, not a reviewing court, and the defendant does not cite any law to the contrary. Our Supreme Court has explained that "[a] motion for judgment of dismissal must be made by the defendant and decided by the court after the plaintiff has rested his case, but before the defendant produces evidence." *Cormier* v. *Fugere,* 185 Conn. 1, 2, 440 A.2d 820 (1981). Thus, we are unable

---

[6] While this appeal was pending, the defendant filed a motion for articulation in which he asked the trial court to rule on his motion to dismiss. The defendant, overlooking the fact that his counsel raised what he characterized as "a motion for a directed verdict" at the close of the plaintiff's case-in-chief, represented that the trial court had failed to rule on his motion to dismiss "at trial . . . and after trial." The defendant also stated in his motion for articulation that, "[a]lthough the [trial] court's ruling on the motion to dismiss may appear to be implicit given the trial court's . . . decision [in favor of the plaintiff with respect to count three], any appellate review of the decision requires an articulation." The trial court, thereafter, did not respond to the motion for articulation, and the defendant did not take any further action in this court to compel the trial court to rule on the motion for articulation.

to grant the defendant any relief with respect to his claim that this court should grant the motion to dismiss.

Even if we reasonably may construe the defendant's claim as an attempt to challenge the trial court's failure to rule on the motion to dismiss, the claim is not reviewable on appeal. This court has explained that "[t]he statutory corollary to [Practice Book § 15-8] is General Statutes § 52-210, which provides: If, on the trial of any issue of fact in a civil action, the plaintiff has produced his evidence and rested his cause, the defendant may move for judgment as in case of nonsuit, and the court may grant such motion, if in its opinion the plaintiff has failed to make out a prima facie case. We note that [a] motion for judgment of dismissal has replaced the former motion for nonsuit . . . for failure to make out a prima facie case. . . .

"In the context of the former motion for nonsuit for failure to make out a prima facie case, our Supreme Court repeatedly has held, in a body of century-old cases, that the *denial* of such a motion is not reviewable on appeal. For example, in *Bennett* v. *Agricultural Ins. Co.*, [51 Conn. 504, 512 (1884)], in an appeal following a jury trial, the court held that [t]he refusal of the court to grant the motion for nonsuit, being [a] matter committed to the discretion of the court, is not reviewable on application of the defendant. The practice in Connecticut, unlike that of some other states, is regulated by statute. [General Statutes (1875 Rev.) tit. 19, c. XIII, §§ 3, 4.] This statute provides for a nonsuit, not when all the evidence on both sides has been received, but when the plaintiff on his part has submitted his evidence and rested. If the court shall be of [the] opinion that a *prima facie* case is not made out, the court may (not must) grant a nonsuit. If granted the plaintiff has his remedy; if refused the defendant has no remedy on that account, but must go on with the trial and submit the case to the jury, either on the plaintiff's evidence alone,

if he chooses, or upon his own evidence as well . . . . Similarly, in *Rice* [v. *Foley*, 98 Conn. 372, 119 A. 353 (1923)], in an appeal following a trial to the court, the court held that [t]he refusal of the court to grant [a] defendant's motion for a nonsuit is not appealable. [Id.], 373. Our research has not revealed any authority that expressly undermines the reviewability holdings of *Bennett*, *Rice*, and the numerous cases of their ilk." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Moutinho* v. *500 North Avenue, LLC*, 191 Conn. App. 608, 614–16, 216 A.3d 667, cert. denied, 333 Conn. 928, 218 A.3d 68 (2019).

In the present case, the court did not expressly rule on the defendant's motion to dismiss that was raised in his posttrial brief, and the court found in favor of the plaintiff with respect to her claim of negligent infliction of emotional distress. In light of that finding, it is reasonable to consider the court's decision not to grant the defendant's motion to dismiss to be the functional equivalent of a denial. Therefore, just as the court concluded in *Moutinho*, we conclude that the court's functional denial of the defendant's motion to dismiss is not reviewable on appeal.

The judgment is affirmed.

In this opinion the other judges concurred.